UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOUSSA OUEDRAOGO, and KENNETH CHOW, individually and on behalf of others similarly situated,<br><br>                              Plaintiff,<br><br>    -against-<br><br>A-1 INTERNATIONAL, INC.<br>f/k/a A-1 International Courier Service, Inc.,<br>SUBCONTRACTING CONCEPTS, LLC d/b/a SCI,<br>RONALD DESENA, an individual,<br>JOHN V. RUTIGLIANO, an individual,<br>JAVIER REYES, an individual,<br>ROBERT LEFEBVRE, an individual, and<br>ROBERT SLACK, an individual,<br><br>                              Defendants. | Civil Action No.: 1:12-CV-5651 |

# DEFENDANTS SUBCONTRACTING CONCEPTS, LLC AND ROBERT SLACK'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AND TO COMPEL ARBITRATION

Theodore Eder, Esq.
Joseph M. DeFazio, Esq.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

PROCEDURAL HISTORY......................................................................................................1

STATEMENT OF FACTS ........................................................................................................2

ARGUMENT ..............................................................................................................................5

    I.   THE VALID AND ENFORCEABLE ARBITRATION PROVISION MANDATES THE DISMISSAL OF THE COMPLAINT ................................................................................5

        A.   Federal Law Strongly Favors the Enforcement of Agreements To Arbitrate.......5

        B.   SCI and Plaintiff Agreed to Arbitrate All Claims Arising Out of Their Employment Relationship..................................................................................................8

        C.   The Broad Arbitration Provisions Cover Plaintiff's Claims Under The FLSA And New York State Law ..........................................................................................9

        D.   Plaintiff's Individual and Class Claims Are Arbitrable................................10

        1. Plaintiffs' FLSA claims are subject to arbitration..............................................10

        2. Plaintiff's claims under the NYLL are subject to arbitration. ...........................12

    II.   ROBERT SLACK IS A BENEFICIARY TO THE CONTRACT...................................13

CONCLUSION ...........................................................................................................................14

**Cases**

*14 Penn Plaza, LLC v. Pyett*, 129 S. Ct. 1456, 1465 (2009) ................................................................ 7

*Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 506 (4th Cir.2002) ...................................................... 7, 11

*American Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 352 (2d. Cir. 1999) ... 13

*American Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304 (2013) ................................... 7

*AT&T Mobility LLC v Concepcion*, 131 S Ct 1740, 1744 (2011) ..................................................... 5

*Bailey v. Ameriquest Mortgage Co.*, 346 F.3d 821, 824 (8th Cir. 2003) ........................................... 7

*Borsack v. Chalk & Vermilion Fine Arts, Ltd.*, 974 F. Supp. 293, 302 (S.D.N.Y. 1997) .............. 13

*Buckeye Check Cashing v. Cardegna*, 126 S.Ct. 1204 (2006) .......................................................... 5

*Byrd*, 105 S. Ct. at 1241 (1985) ............................................................................................................ 6

*Carter v. Countrywide Credit Indus., Inc.*, 362 F. 3d 294, 297-98 (5th Cir. 2004) ....................... 11

*Ciago v. Ameriquest Mortgage Co.*, 295 F. Supp. 2d 324, 328 (S.D.N.Y. 2003) ................... passim

*Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) ........................................................... 9

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ................................................ 9

*Gilmer v. Interstate/Johnson Lane Corp.* 111 S.Ct. 1647 (1991) ................................................ 6, 11

*Grenawalt v. AT&T Mobility, LLC*, 2013 WL 1311165 (S.D.N.Y. Mar. 28, 2013) ..................... 13

*Horenstein v. Mortgage Mkt., Inc.*, No. 99-36125, 9 Fed. Appx. 618, 619 (9th Cir. May 10, 2001) ................................................................................................................................................. 13

*KPMG LLP v Cocchi*, 132 S Ct 23, 25-26 (2011) .............................................................................. 6

*Kristian v. Comcast Corp.*, 446 F.3d 25, 63 (1st Cir. 2006) ............................................................. 9

*Kuehner v. Dickinson & Co.*, 84 F. 3d 316, 319-20 (9th Cir. 1996) ............................................... 11

*Mehler v. Terminex Int'l Co.*, 205 F. 3d 44, 47 (2d. Cir. 2000) ...................................................... 10

*Metzler v. Harris Corp.*, No. 00 CV 5847, 2001 WL 194911, *5 (S.D.N.Y. Feb. 26, 2001) ....... 12

*Mikes v. Strauss*, 889 F. Supp. 746, 757 (S.D.N.Y. 1995) .............................................................. 12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 24, 24-25 (1983) ................. 10

*Oldroyd v. Elmira Sav. Bank,* FSB, 134 F. 3d 72, 76 (2d Cir. 1998) ................................... 6, 8, 10

*Pomposi v. Gamestop, Inc.,* No. 3:09-cv-340, 2010 WL 147196, *13 (D. Conn. Jan. 11, 2010) . 12

*Raniere v. Citigroup, Inc.*, 2013 WL 4046278 (2d. Cir. 2013) ................................................. 7

*Rent–A–Center, West, Inc. v. Jackson,* 130 S.Ct. 2772, 2776 (2010) ....................................... 5

*Skirchak v. Dynamics Research Corp., Inc.,* 432 F. Supp. 2d 175, 179 (D. Mass. 2006) ......... 9, 11

*Spear, Leeds & Kellogg v. Central Life Assurance Co.,* 85 F.3d 21, 27-28 (2d. Cir. 1996) ......... 13

*Steele v. L.F. Rothschild & Co., Inc.,* 701 F.Supp. 407, 408 (S.D.N.Y.1988) ............................ 7

*Sutherland v. Ernst & Young*, 726 F.3d 290 (2d Cir. 2013) ..................................................... 7

*Thomson-CSF, S.A. v. Americna Arbitration Ass'n,* 64 F.3d 773, 776 (2d. Cir. 1995) ............. 13

*Veliz v. Cintas, Corp.,* No. C 03-1180, 2009 WL 1766691, *16 (N.D. Cal. June 22, 2009) ....... 13

*World Crisa Corp. v. Armstrong,* 129 F. 3d 71, 74 (2d Cir. 1997) ........................................... 10

**Rules and Statutes**

19 §§ 650, *et seq* ................................................................................................................. 1

29 U.S.C. § 201 *et seq* .......................................................................................................... 1

9 U.S.C. § 1 *et seq.,* Rule 12 (b)(6) and 12(c) ............................................................... 1, 4, 5

9 U.S.C. § 2 ......................................................................................................................... 5

## PRELIMINARY STATEMENT

Three Opt-in Plaintiffs, Adelso Espinal, Epifanio De Jesus and Derick James (hereinafter "Plaintiffs," or "Espinal," "De Jesus" or "James") cannot maintain their present lawsuit against defendant Subcontracting Concepts, LLC d/b/a SCI ("SCI") because they are beholding to arbitration provisions contained in their Owner/Operator Agreements between Plaintiffs and SCI, wherein Plaintiffs expressly agreed to arbitrate "[a]ll other disputes, claims, questions or differences beyond the jurisdictional maximum for small claims courts" that arise between themselves and SCI. (A copy of the Owner/Operator Agreements between De Jesus and SCI dated March 6, 2012; Espinal and SCI, dated March 20, 2013; and James and SCI, dated December 17, 2012, are attached to the Declaration of Joseph M. DeFazio as Exhibit "1" [hereinafter, "DeFazio Decl."])

SCI now moves, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, Rule 12 (b)(6) and 12(c) of the Federal Rules of Civil Procedure, and pursuant to the arbitration provision contained in the Owner/Operator Agreements, for an Order dismissing this action and compelling Plaintiffs to arbitrate their claims that are the subject of this lawsuit.

## PROCEDURAL HISTORY

Plaintiff Moussa Ouedraogo filed an initial Complaint on July 24, 2012, alleging wage and hour law violations under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York Minimum Wage Act, NY. Lab. Law, Art. 19 §§ 650, *et seq.* ("NYLL"). (Dkt. 1.) Plaintiffs most current Complaint is a Second Amended Complaint filed on December 17, 2012. (Dkt. 16.). In Plaintiffs Second Amended Complaint, Plaintiffs moved to amend their complaint in order to include an additional named plaintiff, Kenneth Chow, add a new individual defendant, supplement existing causes of action, and an additional

1

count for "causes of action based on a common law alternative legal theory." (Dkt. 35, 2). Plaintiff then filed for a collective certification on December 21, 2012. (Dkt. 17). On July 8, 2013, this Court granted Plaintiffs' Motion to Amend the Complaint and Plaintiffs' Motion for FLSA Collective Certification. (Dkt. 45). On July 18, 2013, Defendant, SCI filed for a Motion for Reconsideration regarding this Court's Order to allow for a nationwide FLSA Collective Certification as it pertained to SCI. (Dkt. 53) On October 28, 2013, this Court granted SCI's Motion for Reconsideration limiting Plaintiffs' FLSA Collective Certification, with regard to SCI, to those drivers who operated out of A-1's Long Island City facility. (Dkt. 105).

Since the Collective certification has been granted, Plaintiffs have proceeded to opt-in to the current litigation. (Dkt. No. 102, 103 and 106) On July 28, 2013, a motion for judgment on the pleadings was filed as to second named Plaintiff; Kenneth Chow ("Chow"), based on an arbitration agreement. (Dkt. 70). This motion has been fully briefed and is currently pending before this Court. (*Id.*)

SCI and Robert Slack now move to dismiss the three opt-in Plaintiffs on the same basis as the motion to dismiss Plaintiff Chow.

## STATEMENT OF FACTS

Plaintiffs allege in their opt-in forms that they performed work for A-1 International, Inc., ("A-1") as a delivery driver from between July 2010 and July 2013. (Dkt. No. 102 and 103) By way of opting in to the current matter, Plaintiffs allege that SCI had a contractual relationship with A-1. (Dkt. 35, ¶ 40.) In addition, by virtue of opting in, Plaintiffs allege that they are employees of SCI. (*Id.*, at ¶ 43.) In this matter, Plaintiffs signed independent contractor agreements.[1] (*See* DeFazio Decl. at Exhibit "1")

---

[1] Although Plaintiffs signed independent contractor agreements, they maintain that they were employees of SCI. (Dkt. 35)

2

As indicated in the accompanying Affidavit of Robert Slack, President of SCI (hereinafter, "Slack Affid.") (attached to the DeFazio Decl. as Exhibit "2") each and every driver signs an independent contractor agreement and understands the terms they are obligated to. (Slack Affid., ¶ 6-7). SCI contracts with courier and logistics companies, including A-1, to offer payment processing and other back-office services to companies that use owner operators. (Slack Affid., ¶ 2).

A-1 contracted with SCI for the execution of the services of owner operators Espinal, De Jesus and James. (Slack Affid. ¶ 3). Plaintiffs are independent contractors who owned and operated their own delivery businesses and made deliveries on behalf of A-1 clients. (Slack Affid., ¶ 4). Plaintiffs' sole dealing with SCI was for payment processing and other back-office services regarding their relationship with A-1. (Slack Affid., ¶ 2). If Plaintiffs were unavailable, A-1 and SCI made arrangements with another contractor to handle the deliveries. (Slack Affid., ¶ 5).

As independent contractors, Plaintiffs have the autonomy of creating their own work schedule and engaging in work related business on their own accord. (Slack Affid., ¶ 5). SCI did not exert influence regarding the scheduling of Plaintiffs' deliveries, but rather the customer did. (Slack Affid., ¶ 5). Furthermore, Plaintiffs were free to engage in other employment while continuing their relationship with SCI. (Slack Affid., ¶ 5).

Plaintiffs signed the Owner/Operator Agreements, which contained the following provisions:

TWENTY-SIXTH: <u>ARBITRATION</u>

In the event of any dispute, claim, question, or disagreement arising from or relating to this agreement or the breach thereof, the parties hereto shall use their best efforts to settle the dispute, claim, question, or disagreement. To this effect, the parties shall consult and negotiate with one another in good faith, in an attempt to reach a just and equitable solution, satisfactory to both parties. If resolution of the dispute, claim, question, or disagreement is not reached within a period of 60 days, then upon notice by

either party, disputes that are within the jurisdictional maximum for small claims will be settled in the small claims court where the Owner/Operator resides.

All other disputes, claims, questions or differences beyond the jurisdictional maximum for small claims courts within the locality of the Owner/Operator's residences shall be finally settled by arbitration in accordance with the Federal Arbitration Act.

Neither you nor SCI shall be entitled to join or consolidate claims in arbitration by or against other individuals or entities, or arbitrate any claim as a representative member of a class or in a private attorney general capacity.

The arbitration panel shall be made up of three (3) people. Each party shall choose one arbitrator that will serve on the panel in a non-neutral capacity. The two chosen arbitrators will select a third arbitrator who will be neutral. If the chosen arbitrators are unable to select a third arbitrator within ten (10) days of their selection, a third arbitrator shall be appointed by the American Arbitration Association. Each arbitrator shall have experience in the transportation industry and have a legal background.

Consistent with the expedited nature of arbitration, each party will upon written request of the other party promptly provide copies of any relevant documents necessary to support any claim or defense. All parties shall have the discretion to examine up to three (3) witnesses per party. Each deposition shall be limited to a maximum of two (2) hours. Any objections based on privilege and/or confidential information will be reserved for arbitration. The arbitration and any discovery prior to the arbitration will take place in a location convenient to both parties. The parties may submit briefs in lieu of any formal gathering for arbitration.

The arbitrators will have authority to award actual monetary damages only. No punitive or equitable relief is authorized. All parties shall bear their own costs for arbitration and no attorney's fees or other costs shall be granted to either party.

The arbitrators' decision shall be final and legally binding and judgment may be entered thereon.

..........
THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION AND CLASS ACTION WAIVER WHICH AFFECTS YOUR LEGAL RIGHTS AND MAY BE ENFORCED BY THE PARTIES

(*See* Slack Affid., Ex. "A" at ¶ 26, attached as Ex. "2" to DeFazio Decl.)

As such, SCI respectfully submits that pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, Rule 12(c) of the Federal Rules of Civil Procedure, and pursuant to the arbitration provision contained in the Owner/Operator Agreements, all claims against SCI should be

dismissed and Plaintiffs should be compelled to arbitrate their claims that are the subject of this lawsuit.

## ARGUMENT

I. **THE VALID AND ENFORCEABLE ARBITRATION PROVISION MANDATES THE DISMISSAL OF THE COMPLAINT**

### A. Federal Law Strongly Favors the Enforcement of Agreements To Arbitrate

Plaintiffs signed their respective Owner/Operator Agreements with SCI, which contains an express provision to arbitrate claims that arise between them and SCI. This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA") and Plaintiffs must be compelled to arbitrate. *AT&T Mobility LLC v Concepcion,* 131 S Ct 1740, 1744 (2011). The FAA makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* (citing 9 U.S.C. § 2). Writing for the Court, Justice Anthony Scalia stated "[w]e have described this provision as reflecting both a "liberal federal policy favoring arbitration, and the "fundamental principle that arbitration is a matter of contract." *Id.* at 1745-46 (citing *Rent–A–Center, West, Inc. v. Jackson,* 130 S.Ct. 2772, 2776 (2010). Scalia continued, "[i]n line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms. *Id.* at 1746 (citing *Buckeye Check Cashing v. Cardegna,* 126 S.Ct. 1204 (2006) (J. Scalia) (holding that whether an arbitration provision was void for illegality was to be determined by arbitrator, not court.). Indeed, the "principal purpose" of the FAA is to "ensur[e] that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC, supra,* at 1749.

In *KPMG LLP v Cocchi,* the Court noted that the FAA "provides that written agreements to arbitrate controversies arising out of an existing contract 'shall be valid, irrevocable, and

enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' " *KPMG LLP v Cocchi,* 132 S Ct 23, 25-26 (2011) (citing *Byrd*, 105 S. Ct. at 1241 (1985). Moreover, "the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* (emphasis in original). In addition, the Court stated, "[t]hus, when a complaint contains arbitrable claims, the Act requires courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, the Arbitration Act provides that written agreements to arbitrate controversies arising out of an existing contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' " *Id.*

Furthermore, "[i]t is well settled that federal statutory claims can be the subject of arbitration, absent a contrary Congressional intent.... The burden of showing such legislative intent lies with the party opposing arbitration." *Ciago v. Ameriquest Mortgage Co.,* 295 F. Supp. 2d 324, 328 (S.D.N.Y. 2003) (citing *Oldroyd v. Elmira Sav. Bank,* FSB, 134 F. 3d 72, 76 (2d Cir. 1998). In *Ciago,* Plaintiff attempted to argue that that the Arbitration Agreement was invalid because "an employee cannot be held to have waived a judicial forum as guaranteed by the FLSA." *Id.* at 332. However, the Court stated that there is "nothing to point to in the text of the FLSA that indicates Congress intended to preclude compulsory arbitration of FLSA claims nor does she establish that there is an 'inherent conflict' between arbitration and the policies underlying the FLSA." *Id.* (quoting *Gilmer v. Interstate/Johnson Lane Corp.* 111 S.Ct. 1647 (1991). The Court further noted that in agreeing with the Fourth Circuit, the remedial purpose and enforcement mechanisms shared by the ADEA and FLSA, and the reasoning in *Gilmer* dictates that claims under the FLSA may also be subject to compulsory arbitration provisions.

*Id.* (citing *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 506 (4th Cir.2002); *see Bailey v. Ameriquest Mortgage Co.*, 346 F.3d 821, 824 (8th Cir. 2003) (compelling arbitration of FLSA claims); *Steele v. L.F. Rothschild & Co., Inc.*, 701 F.Supp. 407, 408 (S.D.N.Y.1988) (same).

Furthermore, the U.S. Supreme Court has clearly recognized the rights of parties to bargain for the arbitration of disputes concerning federal claims. *See American Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304 (2013) (J. Scalia) (holding that the FAA does not permit a court to invalidate an arbitration agreement with a class action waiver on the ground that the plaintiff's cost of individually arbitrating federal statutory claims exceeds the potential recovery); *14 Penn Plaza, LLC v. Pyett*, 129 S. Ct. 1456, 1465 (2009) (finding that "having made a bargain to arbitrate, a party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue").

Likewise, two recent decisions from the U.S. Court of Appeals for the Second Circuit have reaffirmed the enforceability of employment-related arbitration agreements containing class action waivers. In *Sutherland v. Ernst & Young*, 726 F.3d 290 (2d Cir. 2013) and *Raniere v. Citigroup, Inc.*, 2013 WL 4046278 (2d. Cir. 2013), the Second Circuit held that the Federal Arbitration Act (FAA) requires courts to enforce a valid agreement to arbitrate even where the relevant substantive law – here, the Fair Labor Standards Act (FLSA) – permits enforcement via collective or class action.

Specifically, the Second Circuit rejected the argument that the right of a collective action is an integral and fundamentally substantive element of the FLSA that cannot be waived. *Id.* Instead, the court held that the FLSA did not contain a contrary congressional command that renders class arbitration waivers unenforceable. *Id.* This holding is in accord with prior rulings by the Fourth, Fifth, and Eighth Circuits, all of which held that an employee's right to file an

7

FLSA collective action was subject to contractual waiver, and the Supreme Court's decision in *Gilmer*, upholding a similar collective action waiver in a suit brought under the Age Discrimination in Employment Act.

Thus, when considering whether to compel arbitration, courts typically consider the following factors: (1) whether the parties agreed to arbitrate; (2) the scope of the underlying arbitration agreement; and (3) whether Congress intended plaintiff's statutory claims to be non-arbitrable. *Ciago,supra,* 295 F. Supp. 2d at 327-28 (S.D.N.Y. 2003) (noting the FAA's clear manifestation of "a liberal public policy favoring arbitration agreements") (internal citations and quotations omitted). As discussed more fully below, Plaintiffs unquestionably agreed to arbitrate all claims relating to their Owner/Operating Agreements with SCI, including any claims for unpaid overtime compensation, and nothing in either the text or legislative history of the FLSA or NYLL indicates any legislative intent to render such claims non-arbitrable.

### B. SCI and Plaintiffs Agreed to Arbitrate All Claims Arising Out of Their Employment Relationship

In determining whether the parties agreed to arbitrate, the Court must "abide by the strong public policy favoring arbitration" and construe the arbitration provision "as broadly as possible, resolving any doubts concerning the scope of arbitrable issues ... in favor of arbitration." *Ciago, supra,* 295 F. Supp. 2d at 328 (citing *Oldroyd, supra,* 134 F. 3d at 76 (2d Cir. 1998). In this case, the arbitration provision contained in the Owner/Operator Agreements clearly and unequivocally states that "*[a]ll other disputes , claims, questions, or differences beyond the jurisdictional maximum for small courts within the locality of the Owner/Operator's residence shall be finally settled by arbitration in accordance with the Federal Arbitration Act.*" (See Slack Affid., Ex. "A" at ¶ 26, attached as Ex. "2" to DeFazio Decl.) (emphasis added). Based on the arbitration provisions, both Plaintiffs and SCI manifested

8

their intent to resolve all disputes related to Plaintiffs relationship with SCI, including claims for unpaid overtime, via arbitration.

To the extent there exist any issues regarding whether the parties agreed to arbitrate, such issues are to be determined by state contract law. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995) (noting that state law governs determination of whether parties agreed to arbitrate); *see also Skirchak v. Dynamics Research Corp., Inc.,* 432 F. Supp. 2d 175, 179 (D. Mass. 2006)(same); Ciago, 295 F. Supp. 2d at 328 (same). Under traditional contract law principals, agreements to arbitrate can be set aside on the basis of unconscionability, coercion, or fraud. *See Doctor's Assoc., Inc. v. Casarotto,* 517 U.S. 681, 687 (1996) (reiterating that generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements); *Kristian v. Comcast Corp.,* 446 F.3d 25, 63 (1st Cir. 2006) (same). Plaintiffs, however, have not alleged that (i) they were coerced or unduly pressured into executing these agreements, (ii) SCI fraudulently induced them to execute these agreements, or (iii) the arbitration provision are unconscionable. To the contrary - Plaintiffs expressly rely on the terms of the Owner/Operator Agreements to support their claims under the FLSA and NYLL. (Dkt. 35, ¶ 102-147). In the absence of any such allegations, Plaintiffs' agreement to arbitrate their employment disputes with SCI is enforceable and cannot be invalidated. See *Ciago,* 295 F. Supp. 2d at 329 (refusing to invalidate arbitration agreement where plaintiff did not assert that "she was coerced or pressured into signing Agreement ... or that the Agreement was induced by fraud or entered into under duress").

### C. The Broad Arbitration Provisions Cover Plaintiff's Claims Under The FLSA And New York State Law

Courts have consistently held that "the existence of a broad agreement to arbitrate creates a presumption of arbitrability, which is overcome only if it may be said with positive assurance

that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Ciago*, 295 F. Supp. 2d 331 (*quoting World Crisa Corp. v. Armstrong,* 129 F. 3d 71, 74 (2d Cir. 1997)); *Mehler v. Terminex Int'l Co.,* 205 F. 3d 44, 47 (2d. Cir. 2000) (same); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 24, 24-25 (1983) ("[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). In this case, the parties agreed to arbitrate all claims related to SCI, Plaintiffs' agreement with SCI, or any rights or obligations stemming from Plaintiffs' relationship with A-1. (*See* Slack Affid., Ex. "A" at ¶ 26, attached as Ex. "2" to DeFazio Decl.) It is axiomatic that SCI's alleged failure to pay overtime to Plaintiffs concerns SCI, Plaintiffs' relationship with SCI and any rights or obligations of the parties related thereto. *See Ciago,* 295 F. Supp. 2d at 331 (finding that arbitration agreement covering all claims arising out of employment relationship was so broad so as to cover overtime claims under the FLSA and New York state law). Plaintiffs, having executed the Owner/Operator Agreements, expressly agreed to have any claims for overtime pay violations heard in arbitration rather than civil court.

### D. Plaintiffs Individual and Class Claims Are Arbitrable

Plaintiffs assert three (3) causes of action against SCI in the Complaint: (i) various FLSA violations (Dkt. 35, ¶¶ 101-119), (ii) various NYLL violations (*Id.*, at ¶¶ 120-141), (iii) common law breach of contract/unjust enrichment. (*Id.*, at ¶¶ 142-147). All of these claims are arbitrable.

#### 1. Plaintiffs' FLSA claims are subject to arbitration.

"It is well established that federal statutory claims can be subject to arbitration, absent a contrary Congressional intent." *Oldroyd,* 134 F. 3d at 77 (noting that the "burden of showing [a] legislative intent [precluding arbitration] lies with the party opposing arbitration") (internal citation omitted). Thus, courts have uniformly held that Congress has not manifested an intent to

preclude arbitration of FLSA claims and that such claims are subject to arbitration pursuant to valid arbitration agreements. As the court stated in *Ciago*, there is no indication that "Congress intended to preclude compulsory arbitration of FLSA claims" nor is there "an 'inherent conflict between arbitration and the policies' underlying the FLSA." 295 F. Supp. 2d at 332 (quoting *Gilmer*, 500 U.S. at 26); see also *Skirchak*, 432 F. Supp. 2d at 181 (compelling arbitration of overtime claims under the FLSA); *Carter v. Countrywide Credit Indus., Inc.*, 362 F. 3d 294, 297-98 (5th Cir. 2004) (affirming district court order compelling arbitration, and noting that nothing in the FLSA's "text or legislative history explicitly preclude[s] arbitration."); *Adkins v. Labor Ready, Inc.*, 303 F. 3d 496, 506 (4th Cir. 2002) (holding that FLSA claims are subject to arbitration); *Kuehner v. Dickinson & Co.*, 84 F. 3d 316, 319-20 (9th Cir. 1996) (finding no evidence in either text or legislative history of FLSA manifesting Congressional intent to preclude arbitration of statutory wage and hour claims).

Courts have similarly extended the reach of broad arbitration provisions - such as those at issue here - and compelled arbitration of FLSA claims brought by an individual on behalf of a putative class of similarly situated employees. *See Carter*, 362 F. 3d at 298 (rejecting plaintiffs' contention that arbitration agreement inhibited their ability to proceed with FLSA overtime claims on a class basis and affirming district court order compelling arbitration of class claims); *see also Gilmer*, 500 U.S. at 32 (holding that class claims under the Age Discrimination in Employment Act, which utilizes FLSA's collective action procedure, are subject to arbitration); *Skirchak*, 432 F. Supp. 2d at 181 (compelling arbitration of class claims under FLSA). Against this legal backdrop, and in light of the arbitration provisions contained in the Owner/Operator Agreements, Plaintiffs individual and class-based FLSA claims should be dismissed and Plaintiffs should be compelled to arbitrate those claims.

## 2. Plaintiffs' claims under the NYLL are subject to arbitration.

As with their FLSA claims alleging violation of that statute's overtime pay provisions, Plaintiffs parallel state law claims alleging overtime violations under the NYLL are also arbitrable. The Southern District of New York's decision in *Ciago v. Ameriquest Mortgage Company* is particularly instructive here. In *Ciago,* as in this case, the plaintiff filed suit on behalf of herself and an alleged class of similarly situated employees, alleging individual and class-based FLSA and NYLL overtime claims. *Ciago, supra,* 295 F. Supp. 2d at 326. At the inception of her employment, the plaintiff executed an arbitration agreement stating that "all claims" between the parties (with the exception of workers' compensation, unemployment and theft of trade secret claims) were subject to arbitration. *Id.* at 327. The defendant moved to dismiss and to compel arbitration pursuant to the FAA. *Id.* After holding that the arbitration agreement was enforceable and that the plaintiff's FLSA claims were arbitrable, the court went on to hold that the plaintiff's individual and class-based overtime claims under the NYLL were also subject to arbitration, noting that "nothing in [the NYLL] indicate[s] that the state legislature intended to preclude compulsory arbitration of claims under those provisions." *Id.* at 334.

Time and again, the reasoning and holding of *Ciago* has been applied by New York courts faced with the question of arbitrability of claims under the NYLL, as well as other courts that have addressed the arbitrability of hybrid FLSA and state overtime claims. *See Mikes v. Strauss,* 889 F. Supp. 746, 757 (S.D.N.Y. 1995) (compelling arbitration of claims for failure to pay wages under the NYLL); *Metzler v. Harris Corp.,* No. 00 CV 5847, 2001 WL 194911, *5 (S.D.N.Y. Feb. 26, 2001) (compelling arbitration of claims for unpaid commissions under the NYLL); *see also Pomposi v. Gamestop, Inc.,* No. 3:09-cv-340, 2010 WL 147196, *13 (D. Conn. Jan. 11, 2010) (dismissing individual and class-based overtime claims under FLSA and

12

Connecticut wage and hour statute and compelling arbitration); *Veliz v. Cintas, Corp.*, No. C 03-1180, 2009 WL 1766691, *16 (N.D. Cal. June 22, 2009) (confirming arbitrator's award finding that arbitration agreement permitted collective and class arbitration of FLSA and state wage law claims); *Horenstein v. Mortgage Mkt., Inc.*, No. 99-36125, 9 Fed. Appx. 618, 619 (9th Cir. May 10, 2001) (holding that employees' FLSA and Oregon state law claims were subject to arbitration). Accordingly, Plaintiffs state law claims under the NYLL should be dismissed and submitted to arbitration.

## II.    ROBERT SLACK IS A BENEFICIARY TO THE CONTRACT

Defendant, Robert Slack ("Slack") is sued in his capacity as President of SCI. (Dkt. 16) Slack is the signatory to the Agreement, but even if he was not, the Second Circuit has held that "nonsignatories may be bound by arbitration agreements entered into by others." *American Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 352 (2d. Cir. 1999); *Thomson-CSF, S.A. v. Americna Arbitration Ass'n,* 64 F.3d 773, 776 (2d. Cir. 1995).

Moreover, third-party beneficiaries of a contract will be bound by an arbitration clause under ordinary principles of contract. *See, e.g., Grenawalt v. AT&T Mobility, LLC,* 2013 WL 1311165 (S.D.N.Y. Mar. 28, 2013) (holding that any disputes arising under a contract, including plaintiffs' purported status as third-party beneficiaries, must be settled by arbitration); *Spear, Leeds & Kellogg v. Central Life Assurance Co.,* 85 F.3d 21, 27-28 (2d. Cir. 1996); *Borsack v. Chalk & Vermilion Fine Arts, Ltd.,* 974 F. Supp. 293, 302 (S.D.N.Y. 1997).

In this matter, it is clear that Robert Slack is covered by the Agreement that Plaintiff entered into with SCI, which contains the above referenced arbitration provision.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully requests that this Court dismiss Plaintiffs causes of actions in their entirety and compel arbitration.

Dated: November 7, 2013
        New York, New York

                                        Yours, etc.

                                        **SEGAL McCAMBRIDGE SINGER & MAHONEY, LTD.**
                                        Attorneys for Defendants,
                                        SUBCONTRACTING CONCEPTS, LLC. and
                                        ROBERT SLACK

By: _____
    Theodore M. Eder (TE3556)
    Joseph DeFazio (JD1984)
    Jennifer Budner (0091)
    850 Third Avenue, Suite 1100
    New York, New York 10022
    (212) 651-7500