Exhibit 1

For Office Use Only
Client #
ID#
Version 2012-0109

## OWNER / OPERATOR AGREEMENT

THIS AGREEMENT and its APPENDICES A and B, made this

__13__   __Dec__   __2012__   by and between SCI, a New York limited liability Company,
(day)   (month)   (year)

"SCI", located at 25 Willowbrook Road, Queensbury, NY 12804, and

__Epifanio__   __Jose__   , an entity or proprietor or authorized agent of
(first name)   (last name)

__Epifanio   Jose__   a business located at
(company name if paid via EIN)

__496   Manhattan Ave__   __NY__   __NY__   __10027__
(address)   (city)   (state)   (zip code)

### DEFINITIONS

1. **"Logistics Brokers"** shall refer to businesses that market, sell, and provide logistical support for the delivery of tangible items.
2. **"Owner / Operators"** are in the business of providing delivery services for Logistics Brokers and receivers of deliveries.
3. **"Delivery Customers"** shall refer to the receivers of any tangible items by an Owner / Operator.
4. **"Customers"** shall refer collectively to Logistics Brokers and Delivery Customers.
5. **"Third Party Administrator or TPA"** shall refer to business that procures, qualifies, and supports Owner / Operators.

### WITNESSETH

**WHEREAS**, SCI is a third party administrator or TPA.

**WHEREAS,** __Epifanio  Jose__   is an Owner / Operator.

**NOW, THEREFORE,** in consideration of the foregoing and the mutual agreements contained herein, the parties agree as follows:

**FIRST:** The Owner / Operator agrees to provide SCI its legal business name, DBA(s), and Federal Employer ID Number prior to offering its services to any Logistics Brokers.  The Owner / Operator also agrees to obtain all necessary business licenses required for their geographic area.

**SECOND:** The Owner / Operator agrees to use the vehicle(s) described in Appendix A in support of its business, and represents that the vehicle(s) is/are owned, leased or is fully authorized to utilize the vehicle(s) in connection with the delivery services agreed to perform;  Owner / Operator also agrees to read the applicable state specific warranties attached as Appendix B and incorporated herein.

**THIRD:** The Owner / Operator represents that the vehicle(s) listed in Appendix A are properly registered and agrees to keep all valid registrations in full force and effect.  Owner / Operator may display on any vehicle(s) used to perform services under this Agreement, logos, including any that are registered trademarks of any of its Customers, meeting the requirements of the applicable Federal and State Department of Transportation/Public Utility or other similar authority.  Owner / Operator may be issued an identification card containing the name and/or logo of a Customer while performing services, and may be furnished with clothing or be required to purchase or rent such clothing containing such name and/or logo, to be worn or shown, as the case may be, when required or requested by its Customers for security purposes.  Such cards and clothing shall be worn or shown, as the case may be, only when performing services for such customer.

**INITIAL**

**FOURTH:** The Owner / Operator agrees to keep, at its sole expense all the equipment it provides pursuant to this Agreement, including but not limited to the vehicle(s) described above, in good operational condition throughout the term of this Agreement. The Owner / Operator further agrees that, at their discretion, it will replace any disabled equipment with equivalent equipment expeditiously.

**FIFTH:** In lieu of rendering services directly, the Owner / Operator has the right to provide and utilize qualified licensed drivers and other personnel as required in connection with the execution and performance of delivery assignments accepted by the Owner / Operator. If additional drivers are used, then the Owner / Operator warrants: 1) All such drivers shall have the same qualifications required of Owner / Operator; 2) Owner / Operator shall be fully responsible for all acts of such drivers in connection with this Agreement; 3) Whenever required by law, the Owner / Operator shall obtain and maintain, and shall utilize only drivers who have valid licenses; and 4) All licenses remain valid for so long as Owner / Operator and its drivers, as the case may be, continue to perform services hereunder. Due to freight regulations and its Customers' requirements, the Owner / Operator agrees not to have any "non-essential" personnel on board his or her vehicle while the vehicle is on the Delivery Customer's premises or while the Owner / Operator's vehicle contains any freight, packages or envelopes that have been consigned for transportation and delivery.

**SIXTH:** The Owner / Operator agrees that no employer/employee relationship is created under this Agreement as a result of the relationship between SCI and the Owner / Operator or its Customers, and that the Owner / Operator is solely responsible for, and shall timely file all required returns and reports and pay any and all estimated and definitive Federal, State, and local income taxes, social security taxes, withholding taxes, payroll taxes, unemployment taxes, and any other taxes attributable to or imposed upon Owner / Operator in connection with the services furnished hereunder. Owner / Operator further understands and agrees that the Owner / Operator shall not be entitled to participate in any plans, arrangements or distributions pertaining to or in connection with any pension, stock, bonus, profit sharing, medical or similar benefits, and that the Owner / Operator is not covered under any unemployment, disability or workers' compensation insurance policy of SCI or the Owner / Operator's Customers. Owner / Operator further agrees that prior to providing any services hereunder he/she shall obtain, and shall keep in full force and effect throughout the term of this Agreement and for so long as Owner / Operator shall furnish services hereunder, such worker's compensation or occupational accident insurance, disability insurance, automobile and general liability insurance as are described in this Agreement, and any other insurance necessary and appropriate to cover loss or damage to property and injury or death to persons in connection with the services furnished by Owner / Operator hereunder. All of such insurances shall be in such amounts, and in such form as is acceptable.

**SEVENTH:** SCI may recommend to Owner / Operator Occupational Accident Insurance providers and plans that SCI has had experience dealing with. In the event the Owner / Operator declines SCI's recommendations, then an Owner / Operator is free to choose his or its own plans and providers; However, Owner / Operator agrees to present a policy Certificate of Worker's Compensation Insurance or Occupational Accident coverage naming SCI. If Owner / Operator accepts a recommended Occupational Accident Insurance plan or provider, then Owner / Operator authorizes and directs SCI to deduct directly from any compensation payable to Owner / Operator a program fee for services furnished hereunder, the costs and premiums payable in connection with the maintenance of such policy for Owner / Operator will be included therein. Owner / Operator shall submit accident and injury occupational accident policies with a $1 million dollar combined limit that meets the insurance standards herein.

**EIGHTH:** The Owner / Operator warrants its drivers used in its delivery services will comply with all applicable laws, customary rules of conduct, regulations and ordinances related to the services provided by Owner / Operator under this Agreement, including but not limited to, the maximum hours of services, safety of operation and other requirements of the Motor Carrier Safety Regulations. The Owner / Operator and its drivers agree to maintain at all times all driver logs required by any Federal and/or State agencies which have jurisdiction over them. Owner / Operator acknowledges that many states' Department of Transportation, as well as other state and federal agencies, restrict the use of drugs or alcohol while on dispatch and prohibit unauthorized personnel from being inside a delivery vehicle while under dispatch and may require drug and/or alcohol testing at random checkpoints or in the event of an accident; Owner / Operator further agrees to abide by these state and federal mandated requirements.

**NINTH:** The Owner / Operator is responsible for, and shall pay, expense items which are normal costs of a delivery business, such as tolls, fuel, oil, tires, repairs, garaging, parking and maintenance of vehicle(s) and other equipment, as well as, office rent, overhead, salaries, taxes and any other business expenses that may be required to perform services for its Customers. The Owner / Operator further agrees to supply at his sole expense all business cards, manifests and material associated with marketing for the delivery business. The Owner / Operator warrants it will file business tax returns for the year(s) in business.

**TENTH:** The Owner / Operator is not required to purchase or rent any products, equipment or services from SCI or Owner / Operator's Customers as a condition of its entering into this Agreement, but may do so at their own discretion. The Owner / Operator acknowledges the need to supply communications equipment compatible with the system being used by the Logistics Broker for the purpose of offering, accepting, and providing delivery services.

**INITIAL**

**ELEVENTH**: The Owner / Operator shall obey, and shall cause all drivers utilized by Owner / Operator to obey, all State and Federal laws, and shall pay and shall cause all drivers and/or other Owner / Operators utilized by Owner / Operator to pay all fines for violations of any law, rules or regulations arising out of the use of the vehicle(s) described herein. The Owner / Operator must maintain required Customer specified liability insurance, valid vehicle registration and a valid driver's license as required by the state. SCI, at their discretion, may require photocopies or other proof of any or all of these required documents for security purposes.

**TWELFTH**: The Owner / Operator agrees to maintain throughout the term of this Agreement, and, for so long as services are furnished herein, insurance that will hold SCI and Owner / Operator's Customers harmless from any and all liabilities, losses, damages, injuries, claims, expenses or the like, that result, at least in part, from or arise out of or by reason of, the operation or use of vehicles or the utilization of drivers or other Owner / Operators. Such insurance shall include, but not be limited to, insurance covering loss, theft or damage to cargo in the Owner / Operator's possession; automobile liability insurance in an amount not less than the state mandated minimum or an amount defined by any of Owner / Operator's Customers, as well as workers' compensation or occupational accident insurance described in this Agreement.

**THIRTEENTH**: For insurance purposes, the Owner / Operator agrees to notify SCI and its Customer of any and all accidents in which the Owner / Operator's drivers are involved, and of any loss or damage to property transported. The initial report will be made via telephone within four (4) hours of the accident or loss or damage, followed by a written report within five (5) days of the occurrence, together with, in the case of an accident, a copy of the MV-104 accident report (or such other applicable accident report form), as filed with the Department of Motor Vehicles.

**FOURTEENTH**: The results achieved are more important than the methods used by which the results are achieved; therefore, the Owner / Operator and its drivers are free to select their own routes or the order of their deliveries, taking into account the needs and deadlines of their Customers. The Customer may have specific requirements and the Owner / Operator must decide to accept or decline the offer of work if they cannot meet those delivery requirements.

**FIFTEENTH**: For each completed delivery or negotiated route, the Owner / Operator shall be paid a fee based on the schedule of rates negotiated by them. In order to ensure proper payment, a delivery shall be deemed complete when the pickup and delivery has been finished and all required paperwork, including a correct and complete invoice have been furnished. A complete invoice shall include all related bills of lading and other shipping documentation. Payment should be received within fifteen (15) days following completion of the delivery and the receipt of the invoice and documentation from Owner / Operator. The Owner / Operator may challenge the amount due within fifteen (15) days from the date notice of the amount to be paid or the payment is due by submitting a letter to SCI and/or the Owner / Operator's Customer, setting forth the specific reason for the challenge. The negotiation of the settlement check by the Owner / Operator, without timely objection as described above, shall constitute acceptance of the fees paid to the Owner / Operator. The Customer is under no obligation to continue to offer delivery work to an Owner / Operator they feel is not meeting the Customer's expectations or for acting in an unprofessional manner. It is also understood delivery volumes will fluctuate and may have an effect on the amount of work offered to the Owner / Operator.

**SIXTEENTH**: Owner / Operators have the right, in their discretion, to accept or reject assignments from Customers. The Owner / Operators will be notified of any assignment by any agreed upon means of communication. In the event, the Owner / Operator rejects an assignment, it shall notify the Customer by whatever means of communication are suitable. Before the Owner / Operator decides to accept an assignment from another Customer, the Owner / Operator must check with its Customer to be certain that there are no legal restrictions or Customer rules that would preclude Owner / Operator from mixing product during transport, (i.e. a TSA regulated package, a class 2 regulated narcotic, radio pharmaceuticals, etc) The Owner / Operator also agrees to assist the Customer in the resolution of complaints.

**SEVENTEENTH**: The Owner / Operator and all of its drivers or associates, if any, agrees not to transport any hazardous materials (as defined in 49 CFR 172.101), unless the Owner / Operator and such drivers handling and transporting such items, is in complete compliance with all applicable Federal, State and local laws, ordinances, rules, regulations and other requirements.

**EIGHTEENTH**: The Owner / Operator shall be responsible for all losses, injuries or damages that occur in connection with the performance of services provided hereunder by the Owner / Operator or its drivers. The Owner / Operator agrees to indemnify, defend, and hold harmless SCI and/or Owner / Operator's Customers for any and all liability, damage, cost and expense incurred by SCI and/or its Customer(s).

**NINETEENTH**: The Owner / Operator may be further financially liable for failure to complete a delivery and for any driver replacement costs, claims for coverage, shortage or damage. The Owner / Operator specifically grants SCI and the Logistics Broker the right to subrogate against it/him, and deduct any such costs from any settlements due, including driver replacement costs, for any claims that SCI and/or the Logistics Broker elects or is obligated to pay or settle.

EJ
INITIAL

The Owner / Operator further agrees to indemnify, defend, and hold harmless SCI and the Logistics Broker for and against all damage to, destruction of, or loss of use of the equipment described herein under this Agreement.

**TWENTIETH:** Non-Disclosure / Confidentiality Provision. The Owner / Operator understands that during performance of services hereunder the Owner / Operator and drivers retained to perform services hereunder, may become privy to confidential information of SCI, and the Logistics Broker, including but not limited to, contact information, personal data, routes, customer identities, costs and billing methods, financial information, and information regarding the business, operations, processes, procedures, along with technology, software, systems, and other confidential and proprietary information. It is agreed that these items are considered to be "Confidential Information", proprietary, and the trade secrets belonging to SCI or the Logistics Broker, respectively, and such information shall not be disclosed by Owner / Operator or any person or entity associated with the Owner / Operator or used IN ANY WAY by Owner / Operator (its drivers or associates) for any purpose whatsoever, other than as necessary in the performance of its service obligations. Owner / Operator agrees that, in the event of any breach or threatened breach of these confidentiality obligations by the Owner / Operator or its drivers or associates, the damages to be suffered by the rightful owner of such Confidential Information are immeasurable, and therefore, such rightful owner shall have the right, in addition to any other remedies available at law or in equity, to obtain an injunction enjoining such threatened breach or further breach of such obligations. The Owner / Operator is not obligated to inform SCI or the Logistics Broker about similar services he or she may be performing for others.

**TWENTY-FIRST:** The term of this Agreement shall commence on the date of execution of this document by SCI and the Owner / Operator, and shall continue for a period of ninety (90) days, subject to renewals, unless either party desires to cancel this Agreement. Notification of a party's intent not to renew this Agreement must be in writing and served upon the other party at least ten (10) days before the upcoming expiration date and shall be delivered by US Mail, Certified or Registered, return receipt requested, or by hand with receipt by the party to be served, acknowledged. If the Owner / Operator terminates this contract without 10 days' notice and not on the anniversary of the 90 day renewal, the Owner / Operator may be required to pay a penalty for said cancellation and authorizes SCI to deduct $250 from the final settlement payment. In addition, this Agreement may be canceled by SCI upon the failure of the Owner / Operator to comply with any of the terms and conditions herein, including failure of the Owner / Operator to follow generally accepted rules of conduct, as may be expected by any Customer. Such cancellation shall be immediate upon notice from SCI, or may occur at some later date, at the sole election of SCI specified in its notice of cancellation.

**TWENTY-SECOND:** In order to comply with certain state and federal regulations, as well as many Delivery Customer's requirements, Owner / Operator authorizes SCI to perform or cause to be performed background checks on Owner / Operator or any of its drivers or associates or on other Owner / Operators, so engaged, at the expense of the Owner / Operator. The background checks may include but are not limited to, criminal and motor vehicle driving records, drug testing and credit reports. The Owner / Operator also agrees to random drug testing and DMV reports through the term of this agreement.

**TWENTY-THIRD:** This Agreement shall constitute the entire Agreement between the parties and shall supersede any other written or oral agreement between the parties with respect to the subject matter hereof. This Agreement may not be altered or amended except by a writing signed by both parties. This Agreement shall be governed by the laws of the State of New York. If any provision of this Agreement or portion thereof is held to be unenforceable by a court of law or equity, said provision or portion thereof shall not prejudice the enforceability of any other provision or portion of the same provision, and instead such provision shall be modified to the least extent necessary to render such provision enforceable while maintaining the intent thereof.

**TWENTY-FORTH:** Owner / Operator acknowledges that any electronic signature has the same force and effect as the use of a signature affixed by hand, under New York Law Section 302.3 of the Electronic Signatures and Records Act.

**TWENTY-FIFTH:** Owner / Operator agrees he or she has read and understood the terms of this contract and by signing this agreement acknowledge they did not need a version of its terms in another language, although other foreign language versions of this agreement are available.

**TWENTY-SIXTH:**   ARBITRATION
In the event of any dispute, claim, question, or disagreement arising from or relating to this agreement or the breach thereof, the parties hereto shall use their best efforts to settle the dispute, claim, question, or disagreement. To this effect, the parties shall consult and negotiate with one another in good faith, in an attempt to reach a just and equitable solution, satisfactory to both parties. If resolution of the dispute, claim, question, or disagreement is not reached within a period of 60 days, then upon notice by either party, disputes that are within the jurisdictional maximum for small claims will be settled in the small claims court where the Owner / Operator resides.

INITIAL

All other disputes, claims, questions, or differences beyond the jurisdictional maximum for small claims courts within the locality of the Owner / Operator's residence shall be finally settled by arbitration in accordance with the Federal Arbitration Act.

Neither you nor SCI shall be entitled to join or consolidate claims in arbitration by or against other individuals or entities, or arbitrate any claim as a representative member of a class or in a private attorney general capacity.

The arbitration panel shall be made up of three (3) people. Each party shall choose one arbitrator that will serve on the panel in a non-neutral capacity. The two chosen arbitrators will select a third arbitrator who will be neutral. If the chosen arbitrators are unable to select a third arbitrator within ten (10) days of their selection, a third arbitrator shall be appointed by the American Arbitration Association. Each arbitrator shall have experience in the transportation industry and have a legal background.

Consistent with the expedited nature of arbitration, each party will upon written request of the other party promptly provide copies of any relevant documents necessary to support any claim or defense. All parties shall have the discretion to examine up to three (3) witnesses per party. Each deposition shall be limited to a maximum of two (2) hours. Any objections based on privilege and/or confidential information will be reserved for arbitration. The arbitration and any discovery prior to the arbitration will take place in a location convenient to both parties. The parties may submit briefs in lieu of any formal gathering for arbitration.

The arbitrators will have authority to award actual monetary damages only. No punitive or equitable relief is authorized. All parties shall bear their own costs for arbitration and no attorney's fees or other costs shall be granted to either party.

The arbitrators' decision shall be final and legally binding and judgment may be entered thereon.

**TWENTY-SEVENTH:** Owner / Operator acknowledges they have read this contract and its terms and agree to abide by the terms and conditions outlined in these documents.

**IN WITNESS WHEREOF**, the Owner / Operator has had sufficient time to review this document and the parties hereto have caused this Agreement and specific states endorsement and understandings to be duly executed the day and year first above written.

THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION AND CLASS-ACTION WAIVER WHICH AFFECTS YOUR LEGAL RIGHTS AND MAY BE ENFORCED BY THE PARTIES

---

OWNER / OPERATOR:

X _Epifanio ant Jose_
SIGNATURE

_06-13-12_
DATE:

_Epifanio Jose_
PRINTED NAME:

_496 Manhattan Ave #4_
ADDRESS:

_New York, NY 10027_
CITY/STATE/ZIP:

FEDERAL EIN#:

SOCIAL SECURITY NUMBER:

---

SCI:

SIGNATURE

DATE:

BY:      Robert Slack

ADDRESS:   25 Willowbrook Road
           Queensbury, NY 12804

# APPENDIX A

## EQUIPMENT LIST

|  | VEHICLE #1 | VEHICLE #2 |
|---|---|---|
| Year: | 2002 | |
| Make: | Chrysler voyager | |
| Model: | voyager | |
| Serial (VIN) No | 1CAGS2526283026696 | |
| License Plate No.: | FGR545D | |
| Vehicle Type: | mini van | |

(Types of Vehicles:  Car / Van (Mini) / Van (Full Size) / Truck (Pickup) / Truck (less than 16ft) / Truck (Over 16ft) / Other)

## AUTO INSURANCE INFORMATION  (please attach copy)

|  | VEHICLE #1 | VEHICLE #2 |
|---|---|---|
| Carrier: | State farm | |
| Policy #: | 137-6B51-D31-32 | |
| Expiration Date: | Temp | |
| Type of Insurance: | Personal | |

(Types of Insurance: Personal / Commercial / Other)

## LICENSE INFORMATION  (please attach copy)

| | |
|---|---|
| Name on Driver's License: | Epifanio Jose |
| Driver's License Number: | 668-236-827 |
| Expiration Date: | 09-05-14 |
| State of Issue: | New York |

# APPENDIX B - STATE SPECIFIC WARRANTIES

**1.     COLORADO:**

The Owner / Operator further warrants:

- It is not required to work exclusively for any Customer, but if it does, it does so for a finite period of time;
- This Agreement is mutually agreed upon and does not authorize SCI to oversee the actual work or instruction on how to perform such work;
- The Owner / Operator will not receive a salary or hourly rate, only a negotiated fixed or contract rate.
- The contract will terminate as stated herein;
- SCI is not authorized to provide training;
- SCI will not provide tools or employment like benefits;
- SCI will not dictate the time of performance for deliveries;
- SCI will provide payment to any trade or business name provided by the Owner / Operator;
- Its business operations will remain separate and distinct from SCI and its Customers;
- Owner / Operator is not entitled to receive unemployment insurance compensation coverage.

**2.     OREGON and NEW JERSEY:**

Owner / Operator acknowledges they are responsible to pay expense items that are the normal costs of doing business, such as tolls, fuel, oil, tires, repairs, garaging, parking and maintenance of vehicle(s) and other equipment, as well as, rent, office overhead, salaries, taxes and any other business expenses that may be required to perform its services.  Owner / Operator further acknowledges and warrants:

- Owner / Operator is registered to do business within its respective state and locality of operation;
- Owner / Operator has or will file Federal and state income tax returns in the name of the business;
- Owner / Operator advertises its business;
- Owner / Operator maintains a separate office or base of operation;
- Owner / Operator endeavors to perform delivery services for various Customers.

**3.     NEW YORK:**

Owner / Operator acknowledges they are responsible to pay expense items that are the normal costs of doing business, such as tolls, fuel, oil, tires, repairs, garaging, parking and maintenance of vehicle(s) and other equipment, as well as, rent, office overhead, salaries, taxes and any other business expenses that may be required to perform its services.
Owner / Operator further warrants:

- Owner / Operator may set their own work schedules, and is free to accept or reject assignments;
- Any settlement payment was the result of a negotiated fixed or contract rate;
- The Owner / Operator files the appropriate business tax returns for any year in business;
- The Owner / Operator maintains a separate business identity with an EIN number;
- The Owner / Operator advertises its business and work for others;
- The Owner / Operator maintains a separate business or office space.

**4.     ILLINOIS / NEVADA / MARYLAND / NEW HAMPSHIRE:**

- Owner / Operator is registered to do business within its respective state and locality of operation;
- Owner / Operator has or will file Federal and state income tax returns in the name of the business;
- This Agreement does not void any benefits Owner / Operator may be entitled to receive under state or federal law;
- The Owner / Operator advertises its business and work for others;
- The Owner / Operator maintains a separate business or office space.

**5.     OHIO / WASHINGTON:**

- Owner / Operator is registered to do business within its respective state and locality of operation;
- Owner / Operator has or will file Federal and state income tax returns in the name of the business;
- Owner / Operator maintains workers' compensation insurance for any employees that reside in the state or reside outside the state but fall with the respective state's guidelines for maintaining workers' compensation insurance.

ES
INITIAL

```
For Office Use Only
Client #_____
ID#_____
Version 2013-0401
```

## OWNER / OPERATOR AGREEMENT

THIS AGREEMENT and its APPENDICES A and B, made this

_20_ _05_ _2013_ by and between SCI, LLC, a New York limited liability Company,
(day)   (month)   (year)

"SCI", located at 25 Willowbrook Road, Queensbury, NY 12804, and

_Adelso_ _Espinal_ , an entity or proprietor or authorized agent of
(first name)   (last name)

_____ a business located at
(company name if paid via EIN)

_20 BYRON Ave_ , _Yonkers_ , _N.Y_ _10704_
(address)   (city)   (state)   (zip code)

### DEFINITIONS

1. **"Logistics Brokers"** shall refer to businesses that market, sell, and provide logistical support for the delivery of tangible items.
2. **"Owner / Operators"** are in the business of providing delivery services for Logistics Brokers and receivers of deliveries.
3. **"Delivery Customers"** shall refer to the receivers of any tangible items by an Owner / Operator.
4. **"Customers"** shall refer collectively to Logistics Brokers and Delivery Customers.
5. **"Third Party Administrator or TPA"** shall refer to business that procures, qualifies, and supports Owner / Operators.

### *WITNESSETH*

WHEREAS, SCI is a third party administrator or TPA.

WHEREAS, _Adelso Espinal_ is an Owner / Operator.

NOW, THEREFORE, in consideration of the foregoing and the mutual agreements contained herein, the parties agree as follows:

**FIRST:** The Owner / Operator agrees to provide SCI its legal business name, DBA(s), and Federal Employer ID Number prior to offering its services to any Logistics Brokers. The Owner / Operator also agrees to obtain all necessary business licenses required for their geographic area.

**SECOND:** The Owner / Operator agrees to use the vehicle(s) described in Appendix A in support of its business, and represents that the vehicle(s) is/are owned, leased or is fully authorized to utilize the vehicle(s) in connection with the delivery services agreed to perform; Owner / Operator also agrees to read the applicable state specific warranties attached as Appendix B and incorporated herein.

**THIRD:** The Owner / Operator represents that the vehicle(s) listed in Appendix A are properly registered and agrees to keep all valid registrations in full force and effect. Owner / Operator may display on any vehicle(s) used to perform services under this Agreement, logos, including any that are registered trademarks of any of its Customers, meeting the requirements of the applicable Federal and State Department of Transportation/Public Utility or other similar authority. Owner / Operator may be issued an identification card containing the name and/or logo of a Customer while performing services, and may be furnished with clothing or be required to purchase or rent such clothing containing such name and/or logo, to be worn or shown, as the case may be, when required or requested by its Customers for security purposes. Such cards and clothing shall be worn or shown, as the case may be, only when performing services for such customer.

_A.E._
INITIAL

**FOURTH:** The Owner / Operator agrees to keep, at its sole expense all the equipment it provides pursuant to this Agreement, including but not limited to the vehicle(s) described above, in good operational condition throughout the term of this Agreement. The Owner / Operator further agrees that, at their discretion, it will replace any disabled equipment with equivalent equipment expeditiously.

**FIFTH:** In lieu of rendering services directly, the Owner / Operator has the right to provide and utilize qualified licensed drivers and other personnel as required in connection with the execution and performance of delivery assignments accepted by the Owner / Operator. If additional drivers are used, then the Owner / Operator warrants: 1) All such drivers shall have the same qualifications required of Owner / Operator; 2) Owner / Operator shall be fully responsible for all acts of such drivers in connection with this Agreement; 3) Whenever required by law, the Owner / Operator shall obtain and maintain, and shall utilize only drivers who have valid licenses; and 4) All licenses remain valid for so long as Owner / Operator and its drivers, as the case may be, continue to perform services hereunder. Due to freight regulations and its Customers' requirements, the Owner / Operator agrees not to have any "non-essential" personnel on board his or her vehicle while the vehicle is on the Delivery Customer's premises or while the Owner / Operator's vehicle contains any freight, packages or envelopes that have been consigned for transportation and delivery.

**SIXTH:** The Owner / Operator agrees that no employer/employee relationship is created under this Agreement as a result of the relationship between SCI and the Owner / Operator or its Customers, and that the Owner / Operator is solely responsible for, and shall timely file all required returns and reports and pay any and all estimated and definitive Federal, State, and local income taxes, social security taxes, withholding taxes, payroll taxes, unemployment taxes, and any other taxes attributable to or imposed upon Owner / Operator in connection with the services furnished hereunder. Owner / Operator further understands and agrees that the Owner / Operator shall not be entitled to participate in any plans, arrangements or distributions pertaining to or in connection with any pension, stock, bonus, profit sharing, medical or similar benefits, and that the Owner / Operator is not covered under any unemployment, disability or workers' compensation insurance policy of SCI or the Owner / Operator's Customers. Owner / Operator further agrees that prior to providing any services hereunder he/she shall obtain, and shall keep in full force and effect throughout the term of this Agreement and for so long as Owner / Operator shall furnish services hereunder, such worker's compensation or occupational accident insurance, disability insurance, automobile and general liability insurance as are described in this Agreement, and any other insurance necessary and appropriate to cover loss or damage to property and injury or death to persons in connection with the services furnished by Owner / Operator hereunder. All of such insurances shall be in such amounts, and in such form as is acceptable.

**SEVENTH:** SCI may recommend to Owner / Operator Occupational Accident Insurance providers and plans that SCI has had experience dealing with. In the event the Owner / Operator declines SCI's recommendations, then an Owner / Operator is free to choose his or its own plans and providers; However, Owner / Operator agrees to present a policy Certificate of Worker's Compensation Insurance or Occupational Accident coverage naming SCI. If Owner / Operator accepts a recommended Occupational Accident Insurance plan or provider, then Owner / Operator authorizes and directs SCI to deduct directly from any compensation payable to Owner / Operator a program fee for services furnished hereunder, the costs and premiums payable in connection with the maintenance of such policy for Owner / Operator will be included therein. Owner / Operator shall submit accident and injury occupational accident policies with a $1 million dollar combined limit that meets the insurance standards herein.

**EIGHTH:** The Owner / Operator warrants its drivers used in its delivery services will comply with all applicable laws, customary rules of conduct, regulations and ordinances related to the services provided by Owner / Operator under this Agreement, including but not limited to, the maximum hours of services, safety of operation and other requirements of the Motor Carrier Safety Regulations. The Owner / Operator and its drivers agree to maintain at all times all driver logs required by any Federal and/or State agencies which have jurisdiction over them. Owner / Operator acknowledges that many states' Department of Transportation, as well as other state and federal agencies, restrict the use of drugs or alcohol while on dispatch and prohibit unauthorized personnel from being inside a delivery vehicle while under dispatch and may require drug and/or alcohol testing at random checkpoints or in the event of an accident; Owner / Operator further agrees to abide by these state and federal mandated requirements.

**NINTH:** The Owner / Operator is responsible for, and shall pay, expense items which are normal costs of a delivery business, such as tolls, fuel, oil, tires, repairs, garaging, parking and maintenance of vehicle(s) and other equipment, as well as, office rent, overhead, salaries, taxes and any other business expenses that may be required to perform services for its Customers. The Owner / Operator further agrees to supply at his sole expense all business cards, manifests and material associated with marketing for the delivery business. The Owner / Operator warrants it will file business tax returns for the year(s) in business.

**TENTH:** The Owner / Operator is not required to purchase or rent any products, equipment or services from SCI or Owner / Operator's Customers as a condition of its entering into this Agreement, but may do so at their own discretion. The Owner / Operator acknowledges the need to supply communications equipment compatible with the system being used by the Logistics Broker for the purpose of offering, accepting, and providing delivery services.

*AE*
INITIAL

**ELEVENTH:** The Owner / Operator shall obey, and shall cause all drivers utilized by Owner / Operator to obey, all State and Federal laws, and shall pay and shall cause all drivers and/or other Owner / Operators utilized by Owner / Operator to pay all fines for violations of any law, rules or regulations arising out of the use of the vehicle(s) described herein. The Owner / Operator must maintain required Customer specified liability insurance, valid vehicle registration and a valid driver's license as required by the state. SCI, at their discretion, may require photocopies or other proof of any or all of these required documents for security purposes.

**TWELFTH:** The Owner / Operator agrees to maintain throughout the term of this Agreement, and, for so long as services are furnished herein, insurance that will hold SCI and Owner / Operator's Customers harmless from any and all liabilities, losses, damages, injuries, claims, expenses or the like, that result, at least in part, from or arise out of or by reason of, the operation or use of vehicles or the utilization of drivers or other Owner / Operators. Such insurance shall include, but not be limited to, insurance covering loss, theft or damage to cargo in the Owner / Operator's possession; automobile liability insurance in an amount not less than the state mandated minimum or an amount defined by any of Owner / Operator's Customers, as well as workers' compensation or occupational accident insurance described in this Agreement.

**THIRTEENTH:** For insurance purposes, the Owner / Operator agrees to notify SCI and its Customer of any and all accidents in which the Owner / Operator's drivers are involved, and of any loss or damage to property transported. The initial report will be made via telephone within four (4) hours of the accident or loss or damage, followed by a written report within five (5) days of the occurrence, together with, in the case of an accident, a copy of the MV-104 accident report (or such other applicable accident report form), as filed with the Department of Motor Vehicles.

**FOURTEENTH:** The results achieved are more important than the methods used by which the results are achieved; therefore, the Owner / Operator and its drivers are free to select their own routes or the order of their deliveries, taking into account the needs and deadlines of their Customers. The Customer may have specific requirements and the Owner / Operator must decide to accept or decline the offer of work if they cannot meet these delivery requirements.

**FIFTEENTH:** For each completed delivery or negotiated route, the Owner / Operator shall be paid a fee based on the schedule of rates negotiated by them. In order to ensure proper payment, a delivery shall be deemed complete when the pickup and delivery has been finished and all required paperwork, including a correct and complete invoice have been furnished. A complete invoice shall include all related bills of lading and other shipping documentation. Payment should be received within fifteen (15) days following completion of the delivery and the receipt of the invoice and documentation from Owner / Operator. The Owner / Operator may challenge the amount due within fifteen (15) days from the date notice of the amount to be paid or the payment is due by submitting a letter to SCI and/or the Owner / Operator's Customer, setting forth the specific reason for the challenge. The negotiation of the settlement check by the Owner / Operator, without timely objection as described above, shall constitute acceptance of the fees paid to the Owner / Operator. The Customer is under no obligation to continue to offer delivery work to an Owner / Operator they feel is not meeting the Customer's expectations or for acting in an unprofessional manner. It is also understood delivery volumes will fluctuate and may have an effect on the amount of work offered to the Owner / Operator.

**SIXTEENTH:** Owner / Operators have the right, in their discretion, to accept or reject assignments from Customers. The Owner / Operators will be notified of any assignment by any agreed upon means of communication. In the event, the Owner / Operator rejects an assignment, it shall notify the Customer by whatever means of communication are suitable. Before the Owner / Operator decides to accept an assignment from another Customer, the Owner / Operator must check with its Customer to be certain that there are no legal restrictions or Customer rules that would preclude Owner / Operator from mixing product during transport, (i.e. a TSA regulated package, a class 2 regulated narcotic, radio pharmaceuticals, etc) The Owner / Operator also agrees to assist the Customer in the resolution of complaints.

**SEVENTEENTH:** The Owner / Operator and all of its drivers or associates, if any, agrees not to transport any hazardous materials (as defined in 49 CFR 172.101), unless the Owner / Operator and such drivers handling and transporting such items, is in complete compliance with all applicable Federal, State and local laws, ordinances, rules, regulations and other requirements.

**EIGHTEENTH:** The Owner / Operator shall be responsible for all losses, injuries or damages that occur in connection with the performance of services provided hereunder by the Owner / Operator or its drivers. The Owner / Operator agrees to indemnify, defend, and hold harmless SCI and/or Owner / Operator's Customers for any and all liability, damage, cost and expense incurred by SCI and/or its Customer(s).

**NINETEENTH:** The Owner / Operator may be further financially liable for failure to complete a delivery and for any driver replacement costs, claims for coverage, shortage or damage. The Owner / Operator specifically grants SCI and the Logistics Broker the right to subrogate against it/him, and deduct any such costs from any settlements due, including driver replacement costs, for any claims that SCI and/or the Logistics Broker elects or is obligated to pay or settle.

*AE.*
INITIAL

The Owner / Operator further agrees to indemnify, defend, and hold harmless SCI and the Logistics Broker for and against all damage to, destruction of, or loss of use of the equipment described herein under this Agreement.

**TWENTIETH:** Non-Disclosure / Confidentiality Provision. The Owner / Operator understands that during performance of services hereunder the Owner / Operator and drivers retained to perform services hereunder, may become privy to confidential information of SCI, and the Logistics Broker, including but not limited to, contact information, personal data, routes, customer identities, costs and billing methods, financial information, and information regarding the business, operations, processes, procedures, along with technology, software, systems, and other confidential and proprietary information. It is agreed that these items are considered to be "Confidential Information", proprietary, and the trade secrets belonging to SCI or the Logistics Broker, respectively, and such information shall not be disclosed by Owner / Operator or any person or entity associated with the Owner / Operator or used IN ANY WAY by Owner / Operator (its drivers or associates) for any purpose whatsoever, other than as necessary in the performance of its service obligations. Owner / Operator agrees that, in the event of any breach or threatened breach of these confidentiality obligations by the Owner / Operator or its drivers or associates, the damages to be suffered by the rightful owner of such Confidential Information are immeasurable, and therefore, such rightful owner shall have the right, in addition to any other remedies available at law or in equity, to obtain an injunction enjoining such threatened breach or further breach of such obligations. The Owner / Operator is not obligated to inform SCI or the Logistics Broker about similar services he or she may be performing for others.

**TWENTY-FIRST:** The term of this Agreement shall commence on the date of execution of this document by SCI and the Owner / Operator, and shall continue for a period of ninety (90) days, subject to renewals, unless either party desires to cancel this Agreement. Notification of a party's intent not to renew this Agreement must be in writing and served upon the other party at least ten (10) days before the upcoming expiration date and shall be delivered by US Mail, Certified or Registered, return receipt requested, or by hand with receipt by the party to be served, acknowledged. If the Owner / Operator terminates this contract without 10 days' notice and not on the anniversary of the 90 day renewal, the Owner / Operator may be required to pay a penalty for said cancellation and authorizes SCI to deduct $250 from the final settlement payment. In addition, this Agreement may be canceled by SCI upon the failure of the Owner / Operator to comply with any of the terms and conditions herein, including failure of the Owner / Operator to follow generally accepted rules of conduct, as may be expected by any Customer. Such cancellation shall be immediate upon notice from SCI, or may occur at some later date, at the sole election of SCI specified in its notice of cancellation.

**TWENTY-SECOND:** In order to comply with certain state and federal regulations, as well as many Delivery Customer's requirements, Owner / Operator authorizes SCI to perform or cause to be performed background checks on Owner / Operator or any of its drivers or associates or on other Owner / Operators, so engaged, at the expense of the Owner / Operator. The background checks may include but are not limited to, criminal and motor vehicle driving records, drug testing and credit reports. The Owner / Operator also agrees to random drug testing and DMV reports through the term of this agreement.

**TWENTY-THIRD:** This Agreement shall constitute the entire Agreement between the parties and shall supersede any other written or oral agreement between the parties with respect to the subject matter hereof. This Agreement may not be altered or amended except by a writing signed by both parties. This Agreement shall be governed by the laws of the State of New York. If any provision of this Agreement or portion thereof is held to be unenforceable by a court of law or equity, said provision or portion thereof shall not prejudice the enforceability of any other provision or portion of the same provision, and instead such provision shall be modified to the least extent necessary to render such provision enforceable while maintaining the intent thereof.

**TWENTY-FOURTH:** Owner / Operator acknowledges that any electronic signature has the same force and effect as the use of a signature affixed by hand, under New York Law Section 302.3 of the Electronic Signatures and Records Act.

**TWENTY-FIFTH:** Owner / Operator agrees he or she has read and understood the terms of this contract and by signing this agreement acknowledge they did not need a version of its terms in another language, although other foreign language versions of this agreement are available.

**TWENTY-SIXTH:**    ARBITRATION
In the event of any dispute, claim, question, or disagreement arising from or relating to this agreement or the breach thereof, or service arrangement between Owner / Operator and SCI's clients, the parties hereto shall use their best efforts to settle the dispute, claim, question, or disagreement. To this effect, the parties shall consult and negotiate with one another in good faith, in an attempt to reach a just and equitable solution, satisfactory to both parties. If resolution of the dispute, claim, question, or disagreement is not reached within a period of 60 days, then upon notice by either party, disputes that are within the jurisdictional maximum for small claims will be settled in the small claims court where the Owner / Operator resides.

*AE.*
**INITIAL**

All other disputes, claims, questions, or differences beyond the jurisdictional maximum for small claims courts within the locality of the Owner / Operator's residence shall be finally settled by arbitration in accordance with the Federal Arbitration Act.

Neither you nor SCI shall be entitled to join or consolidate claims in arbitration by or against other individuals or entities, or arbitrate any claim as a representative member of a class or in a private attorney general capacity.

The arbitration panel shall be made up of three (3) people. Each party shall choose one arbitrator that will serve on the panel in a non-neutral capacity. The two chosen arbitrators will select a third arbitrator who will be neutral. If the chosen arbitrators are unable to select a third arbitrator within ten (10) days of their selection, a third arbitrator shall be appointed by the American Arbitration Association. Each arbitrator shall have experience in the transportation industry and have a legal background.

Consistent with the expedited nature of arbitration, each party will upon written request of the other party promptly provide copies of any relevant documents necessary to support any claim or defense. All parties shall have the discretion to examine up to three (3) witnesses per party. Each deposition shall be limited to a maximum of two (2) hours. Any objections based on privilege and/or confidential information will be reserved for arbitration. The arbitration and any discovery prior to the arbitration will take place in a location convenient to both parties. The parties may submit briefs in lieu of any formal gathering for arbitration.

The arbitrators will have authority to award actual monetary damages only. No punitive or equitable relief is authorized. All parties shall bear their own costs for arbitration and no attorney's fees or other costs shall be granted to either party.

The arbitrators' decision shall be final and legally binding and judgment may be entered thereon.

**TWENTY-SEVENTH:** Owner / Operator acknowledges they have read this contract and its terms and agree to abide by the terms and conditions outlined in these documents.

**IN WITNESS WHEREOF,** the Owner / Operator has had sufficient time to review this document and the parties hereto have caused this Agreement and specific states endorsement and understandings to be duly executed the day and year first above written.

THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION AND CLASS-ACTION WAIVER WHICH AFFECTS YOUR LEGAL RIGHTS AND MAY BE ENFORCED BY THE PARTIES

| OWNER / OPERATOR: | SCI: |
|---|---|
| SIGNATURE: *(signature)* | SIGNATURE |
| DATE: 05-20-13 | |
| PRINTED NAME: Adelso Espinal | DATE: |
| ADDRESS: 20 Byron Ave | BY:        Robert Slack |
| CITY/STATE/ZIP: Yonkers N.Y. 10704 | ADDRESS:   25 Willowbrook Road |
| FEDERAL EIN#: | Queensbury, NY 12804 |
| SOCIAL SECURITY NUMBER: | |

# APPENDIX A

## EQUIPMENT LIST

|  | VEHICLE #1 | VEHICLE #2 |
|---|---|---|
| Year: | 2000 | |
| Make: | SUBAR | |
| Model: | E. Pas. 4 DOOr | |
| Serial (VIN) No | 4S3BH665476636I0 | |
| License Plate No.: | EYB 3135 | |
| Registration Expiration: | 4/25/14 | |
| Vehicle Type: | Car | |

(Types of Vehicles:  Car / Van (Mini) / Van (Full Size) / Truck (Pickup) / Truck (less than 16ft) / Truck (Over 16ft) / Other)

## AUTO INSURANCE INFORMATION  (please attach copy)

|  | VEHICLE #1 | VEHICLE #2 |
|---|---|---|
| Carrier: | All State | |
| Policy #: | 913924709 | |
| Expiration Date: | 10/14/13 | |
| Type of Insurance: | Liability | |

(Types of Insurance:  Personal / Commercial / Other)

## LICENSE INFORMATION  (please attach copy)

| Name on Driver's License: | Adelso Espinal |
|---|---|
| Driver's License Number: | 291921047 |
| Expiration Date: | 08/28/16 |
| State of Issue: | New york |

# APPENDIX B - STATE SPECIFIC WARRANTIES

1. **COLORADO:**

The Owner / Operator further warrants:

- It is not required to work exclusively for any Customer, but if it does, it does so for a finite period of time;
- This Agreement is mutually agreed upon and does not authorize SCI to oversee the actual work or instruction on how to perform such work;
- The Owner / Operator will not receive a salary or hourly rate, only a negotiated fixed or contract rate;
- The contract will terminate as stated herein;
- SCI is not authorized to provide training;
- SCI will not provide tools or employment like benefits;
- SCI will not dictate the time of performance for deliveries;
- SCI will provide payment to any trade or business name provided by the Owner / Operator;
- Its business operations will remain separate and distinct from SCI and its Customers;
- Owner / Operator is not entitled to receive unemployment insurance compensation coverage.

2. **OREGON and NEW JERSEY:**

Owner / Operator acknowledges they are responsible to pay expense items that are the normal costs of doing business, such as tolls, fuel, oil, tires, repairs, garaging, parking and maintenance of vehicle(s) and other equipment, as well as, rent, office overhead, salaries, taxes and any other business expenses that may be required to perform its services. Owner / Operator further acknowledges and warrants:

- Owner / Operator is registered to do business within its respective state and locality of operation;
- Owner / Operator has or will file Federal and state income tax returns in the name of the business;
- Owner / Operator advertises its business;
- Owner / Operator maintains a separate office or base of operation;
- Owner / Operator endeavors to perform delivery services for various Customers.

3. **NEW YORK:**

Owner / Operator acknowledges they are responsible to pay expense items that are the normal costs of doing business, such as tolls, fuel, oil, tires, repairs, garaging, parking and maintenance of vehicle(s) and other equipment, as well as, rent, office overhead, salaries, taxes and any other business expenses that may be required to perform its services.
Owner / Operator further warrants:

- Owner / Operator may set their own work schedules, and is free to accept or reject assignments;
- Any settlement payment was the result of a negotiated fixed or contract rate;
- The Owner / Operator files the appropriate business tax returns for any year in business;
- The Owner / Operator maintains a separate business identity with an EIN number;
- The Owner / Operator advertises its business and work for others;
- The Owner / Operator maintains a separate business or office space.

4. **ILLINOIS / NEVADA / MARYLAND / NEW HAMPSHIRE:**

- Owner / Operator is registered to do business within its respective state and locality of operation;
- Owner / Operator has or will file Federal and state income tax returns in the name of the business;
- This Agreement does not void any benefits Owner / Operator may be entitled to receive under state or federal law;
- The Owner / Operator advertises its business and work for others;
- The Owner / Operator maintains a separate business or office space.

5. **OHIO / WASHINGTON:**

- Owner / Operator is registered to do business within its respective state and locality of operation;
- Owner / Operator has or will file Federal and state income tax returns in the name of the business;
- Owner / Operator maintains workers' compensation insurance for any employees that reside in the state or reside outside the state but fall with the respective state's guidelines for maintaining workers' compensation insurance.

AE.
INITIAL

For Office Use Only
Client #
ID#
Version 2012-0109

# OWNER / OPERATOR AGREEMENT

THIS AGREEMENT and its APPENDICES A and B, made this

__17__ __12__ __12__ by and between SCI, a New York limited liability Company,
(day) (month) (year)

"SCI", located at 25 Willowbrook Road, Queensbury, NY 12804, and

__Derick__ __James__, an entity or proprietor or authorized agent of
(first name) (last name)

__NJS Trucking Services LLC__ a business located at
(company name if paid via EIN)

__320 South 5 Avenue__ __Mt Vernon__, __NY__ _____
(address) (city) (state) (zip code)

## DEFINITIONS

1. **"Logistics Brokers"** shall refer to businesses that market, sell, and provide logistical support for the delivery of tangible items.
2. **"Owner / Operators"** are in the business of providing delivery services for Logistics Brokers and receivers of deliveries.
3. **"Delivery Customers"** shall refer to the receivers of any tangible items by an Owner / Operator.
4. **"Customers"** shall refer collectively to Logistics Brokers and Delivery Customers.
5. **"Third Party Administrator or TPA"** shall refer to business that procures, qualifies, and supports Owner / Operators.

## WITNESSETH

**WHEREAS**, SCI is a third party administrator or TPA.

**WHEREAS** __Derick James__ is an Owner / Operator.

**NOW, THEREFORE**, in consideration of the foregoing and the mutual agreements contained herein, the parties agree as follows:

**FIRST**: The Owner / Operator agrees to provide SCI its legal business name, DBA(s), and Federal Employer ID Number prior to offering its services to any Logistics Brokers. The Owner / Operator also agrees to obtain all necessary business licenses required for their geographic area.

**SECOND**: The Owner / Operator agrees to use the vehicle(s) described in Appendix A in support of its business, and represents that the vehicle(s) is/are owned, leased or is fully authorized to utilize the vehicle(s) in connection with the delivery services agreed to perform; Owner / Operator also agrees to read the applicable state specific warranties attached as Appendix B and incorporated herein.

**THIRD**: The Owner / Operator represents that the vehicle(s) listed in Appendix A are properly registered and agrees to keep all valid registrations in full force and effect. Owner / Operator may display on any vehicle(s) used to perform services under this Agreement, logos, including any that are registered trademarks of any of its Customers, meeting the requirements of the applicable Federal and State Department of Transportation/Public Utility or other similar authority. Owner / Operator may be issued an identification card containing the name and/or logo of a Customer while performing services, and may be furnished with clothing or be required to purchase or rent such clothing containing such name and/or logo, to be worn or shown, as the case may be, when required or requested by its Customers for security purposes. Such cards and clothing shall be worn or shown, as the case may be, only when performing services for such customer.

DJ
INITIAL

**FOURTH:** The Owner / Operator agrees to keep, at its sole expense all the equipment it provides pursuant to this Agreement, including but not limited to the vehicle(s) described above, in good operational condition throughout the term of this Agreement. The Owner / Operator further agrees that, at their discretion, it will replace any disabled equipment with equivalent equipment expeditiously.

**FIFTH:** In lieu of rendering services directly, the Owner / Operator has the right to provide and utilize qualified licensed drivers and other personnel as required in connection with the execution and performance of delivery assignments accepted by the Owner / Operator. If additional drivers are used, then the Owner / Operator warrants: 1) All such drivers shall have the same qualifications required of Owner / Operator; 2) Owner / Operator shall be fully responsible for all acts of such drivers in connection with this Agreement; 3) Whenever required by law, the Owner / Operator shall obtain and maintain, and shall utilize only drivers who have valid licenses; and 4) All licenses remain valid for so long as Owner / Operator and its drivers, as the case may be, continue to perform services hereunder. Due to freight regulations and its Customers' requirements,  the Owner / Operator agrees not to have any "non-essential" personnel on board his or her vehicle while the vehicle is on the Delivery Customer's premises  or while the Owner / Operator's vehicle contains any freight, packages or envelopes that have been consigned for transportation and delivery.

**SIXTH:** The Owner / Operator agrees that no employer/employee relationship is created under this Agreement as a result of the relationship between SCI and the Owner / Operator or its Customers, and that the Owner / Operator is solely responsible for, and shall timely file all required returns and reports and pay any and all estimated and definitive Federal, State, and local income taxes, social security taxes, withholding taxes, payroll taxes, unemployment taxes, and any other taxes attributable to or imposed upon Owner / Operator in connection with the services furnished hereunder. Owner / Operator further understands and agrees that the Owner / Operator shall not be entitled to participate in any plans, arrangements or distributions pertaining to or in connection with any pension, stock, bonus, profit sharing, medical or similar benefits, and that the Owner / Operator is not covered under any unemployment, disability or workers' compensation insurance policy of SCI or the Owner / Operator's Customers. Owner / Operator further agrees that prior to providing any services hereunder he/she shall obtain, and shall keep in full force and effect throughout the term of this Agreement and for so long as Owner / Operator shall furnish services hereunder, such worker's compensation or occupational accident insurance, disability insurance, automobile and general liability insurance as are described in this Agreement, and any other insurance necessary and appropriate to cover loss or damage to property and injury or death to persons in connection with the services furnished by Owner / Operator hereunder. All of such insurances shall be in such amounts, and in such form as is acceptable.

**SEVENTH:**  SCI may recommend to Owner / Operator Occupational Accident Insurance providers and plans that SCI has had experience dealing with.   In the event the Owner / Operator declines SCI's recommendations, then an Owner / Operator is free to choose his or its own plans and providers;  However,  Owner / Operator agrees to present a policy Certificate of Worker's Compensation Insurance or Occupational Accident coverage naming SCI.  If Owner / Operator  accepts  a recommended Occupational Accident Insurance plan or provider, then Owner / Operator authorizes and directs SCI to deduct directly from any compensation payable to Owner / Operator a program fee for services furnished hereunder, the costs and premiums payable in connection with the maintenance of such policy for Owner / Operator will be included therein. Owner / Operator shall submit accident and injury occupational accident policies with a $1 million dollar combined limit that meets the insurance standards herein.

**EIGHTH:**  The Owner / Operator warrants its drivers used in its delivery services will comply with all applicable laws, customary rules of conduct, regulations and ordinances related to the services provided by Owner / Operator under this Agreement, including  but not limited to, the maximum hours of services, safety of operation and other requirements of the Motor Carrier Safety Regulations. The Owner / Operator and its drivers agree to maintain at all times all driver logs required by any Federal and/or State agencies which have jurisdiction over them. Owner / Operator acknowledges that many states' Department of Transportation, as well as other state and federal agencies, restrict the use of drugs or alcohol while on dispatch and prohibit unauthorized personnel from being inside a delivery vehicle while under dispatch and may require drug and/or alcohol testing at random checkpoints or in the event of an accident; Owner / Operator further agrees to abide by these state and federal mandated requirements.

**NINTH:**  The Owner / Operator is responsible for, and shall pay, expense items which are normal costs of a delivery business, such as tolls, fuel, oil, tires, repairs, garaging, parking and maintenance of vehicle(s) and other equipment, as well as, office rent, overhead, salaries, taxes and any other business expenses that may be required to perform services for its Customers. The Owner / Operator further agrees to supply at his sole expense all business cards, manifests and material associated with marketing for the delivery business. The Owner / Operator warrants it will file business tax returns for the year(s) in business.

**TENTH:**  The Owner / Operator is not required to purchase or rent any products, equipment or services from SCI or Owner / Operator's Customers as a condition of its entering into this Agreement, but may do so at their own discretion.  The Owner / Operator acknowledges the need to supply communications equipment compatible with the system being used by the Logistics Broker for the purpose of offering, accepting, and providing delivery services.

INITIAL

**ELEVENTH:** The Owner / Operator shall obey, and shall cause all drivers utilized by Owner / Operator to obey, all State and Federal laws, and shall pay and shall cause all drivers and/or other Owner / Operators utilized by Owner / Operator to pay all fines for violations of any law, rules or regulations arising out of the use of the vehicle(s) described herein. The Owner / Operator must maintain required Customer specified liability insurance, valid vehicle registration and a valid driver's license as required by the state. SCI, at their discretion, may require photocopies or other proof of any or all of these required documents for security purposes.

**TWELFTH:** The Owner / Operator agrees to maintain throughout the term of this Agreement, and, for so long as services are furnished herein, insurance that will hold SCI and Owner / Operator's Customers harmless from any and all liabilities, losses, damages, injuries, claims, expenses or the like, that result, at least in part, from or arise out of or by reason of, the operation or use of vehicles or the utilization of drivers or other Owner / Operators. Such insurance shall include, but not be limited to, insurance covering loss, theft or damage to cargo in the Owner / Operator's possession; automobile liability insurance in an amount not less than the state mandated minimum or an amount defined by any of Owner / Operator's Customers, as well as workers' compensation or occupational accident insurance described in this Agreement.

**THIRTEENTH:** For insurance purposes, the Owner / Operator agrees to notify SCI and its Customer of any and all accidents in which the Owner / Operator's drivers are involved, and of any loss or damage to property transported. The initial report will be made via telephone within four (4) hours of the accident or loss or damage, followed by a written report within five (5) days of the occurrence, together with, in the case of an accident, a copy of the MV-104 accident report (or such other applicable accident report form), as filed with the Department of Motor Vehicles.

**FOURTEENTH:** The results achieved are more important than the methods used by which the results are achieved; therefore, the Owner / Operator and its drivers are free to select their own routes or the order of their deliveries, taking into account the needs and deadlines of their Customers. The Customer may have specific requirements and the Owner / Operator must decide to accept or decline the offer of work if they cannot meet those delivery requirements.

**FIFTEENTH:** For each completed delivery or negotiated route, the Owner / Operator shall be paid a fee based on the schedule of rates negotiated by them. In order to ensure proper payment, a delivery shall be deemed complete when the pickup and delivery has been finished and all required paperwork, including a correct and complete invoice have been furnished. A complete invoice shall include all related bills of lading and other shipping documentation. Payment should be received within fifteen (15) days following completion of the delivery and the receipt of the invoice and documentation from Owner / Operator. The Owner / Operator may challenge the amount due within fifteen (15) days from the date notice of the amount to be paid or the payment is due by submitting a letter to SCI and/or the Owner / Operator's Customer, setting forth the specific reason for the challenge. The negotiation of the settlement check by the Owner / Operator, without timely objection as described above, shall constitute acceptance of the fees paid to the Owner / Operator. The Customer is under no obligation to continue to offer delivery work to an Owner / Operator they feel is not meeting the Customer's expectations or for acting in an unprofessional manner. It is also understood delivery volumes will fluctuate and may have an effect on the amount of work offered to the Owner / Operator.

**SIXTEENTH:** Owner / Operators have the right, in their discretion, to accept or reject assignments from Customers. The Owner / Operators will be notified of any assignment by any agreed upon means of communication. In the event, the Owner / Operator rejects an assignment, it shall notify the Customer by whatever means of communication are suitable. Before the Owner / Operator decides to accept an assignment from another Customer, the Owner / Operator must check with its Customer to be certain that there are no legal restrictions or Customer rules that would preclude Owner / Operator from mixing product during transport, (i.e. a TSA regulated package, a class 2 regulated narcotic, radio pharmaceuticals, etc) The Owner / Operator also agrees to assist the Customer in the resolution of complaints.

**SEVENTEENTH:** The Owner / Operator and all of its drivers or associates, if any, agrees not to transport any hazardous materials (as defined in 49 CFR 172.101), unless the Owner / Operator and such drivers handling and transporting such items, is in complete compliance with all applicable Federal, State and local laws, ordinances, rules, regulations and other requirements.

**EIGHTEENTH:** The Owner / Operator shall be responsible for all losses, injuries or damages that occur in connection with the performance of services provided hereunder by the Owner / Operator or its drivers. The Owner / Operator agrees to indemnify, defend, and hold harmless SCI and/or Owner / Operator's Customers for any and all liability, damage, cost and expense incurred by SCI and/or its Customer(s).

**NINETEENTH:** The Owner / Operator may be further financially liable for failure to complete a delivery and for any driver replacement costs, claims for coverage, shortage or damage. The Owner / Operator specifically grants SCI and the Logistics Broker the right to subrogate against it/him, and deduct any such costs from any settlements due, including driver replacement costs, for any claims that SCI and/or the Logistics Broker elects or is obligated to pay or settle.

INITIAL

The Owner / Operator further agrees to indemnify, defend, and hold harmless SCI and the Logistics Broker for and against all damage to, destruction of, or loss of use of the equipment described herein under this Agreement.

**TWENTIETH:** Non-Disclosure / Confidentiality Provision. The Owner / Operator understands that during performance of services hereunder the Owner / Operator and drivers retained to perform services hereunder, may become privy to confidential information of SCI, and the Logistics Broker, including but not limited to, contact information, personal data, routes, customer identities, costs and billing methods, financial information, and information regarding the business, operations, processes, procedures, along with technology, software, systems, and other confidential and proprietary information. It is agreed that these items are considered to be "Confidential Information", proprietary, and the trade secrets belonging to SCI or the Logistics Broker, respectively, and such information shall not be disclosed by Owner / Operator or any person or entity associated with the Owner / Operator or used IN ANY WAY by Owner / Operator (its drivers or associates) for any purpose whatsoever, other than as necessary in the performance of its service obligations. Owner / Operator agrees that, in the event of any breach or threatened breach of these confidentiality obligations by the Owner / Operator or its drivers or associates, the damages to be suffered by the rightful owner of such Confidential Information are immeasurable, and therefore, such rightful owner shall have the right, in addition to any other remedies available at law or in equity, to obtain an injunction enjoining such threatened breach or further breach of such obligations. The Owner / Operator is not obligated to inform SCI or the Logistics Broker about similar services he or she may be performing for others.

**TWENTY-FIRST:** The term of this Agreement shall commence on the date of execution of this document by SCI and the Owner / Operator, and shall continue for a period of ninety (90) days, subject to renewals, unless either party desires to cancel this Agreement. Notification of a party's intent not to renew this Agreement must be in writing and served upon the other party at least ten (10) days before the upcoming expiration date and shall be delivered by US Mail, Certified or Registered, return receipt requested, or by hand with receipt by the party to be served, acknowledged. If the Owner / Operator terminates this contract without 10 days' notice and not on the anniversary of the 90 day renewal, the Owner / Operator may be required to pay a penalty for said cancellation and authorizes SCI to deduct $250 from the final settlement payment. In addition, this Agreement may be canceled by SCI upon the failure of the Owner / Operator to comply with any of the terms and conditions herein, including failure of the Owner / Operator to follow generally accepted rules of conduct, as may be expected by any Customer. Such cancellation shall be immediate upon notice from SCI, or may occur at some later date, at the sole election of SCI specified in its notice of cancellation.

**TWENTY-SECOND:** In order to comply with certain state and federal regulations, as well as many Delivery Customer's requirements, Owner / Operator authorizes SCI to perform or cause to be performed background checks on Owner / Operator or any of its drivers or associates or on other Owner / Operators, so engaged, at the expense of the Owner / Operator. The background checks may include but are not limited to, criminal and motor vehicle driving records, drug testing and credit reports. The Owner / Operator also agrees to random drug testing and DMV reports through the term of this agreement.

**TWENTY-THIRD:** This Agreement shall constitute the entire Agreement between the parties and shall supersede any other written or oral agreement between the parties with respect to the subject matter hereof. This Agreement may not be altered or amended except by a writing signed by both parties. This Agreement shall be governed by the laws of the State of New York. If any provision of this Agreement or portion thereof is held to be unenforceable by a court of law or equity, said provision or portion thereof shall not prejudice the enforceability of any other provision or portion of the same provision, and instead such provision shall be modified to the least extent necessary to render such provision enforceable while maintaining the intent thereof.

**TWENTY-FORTH:** Owner / Operator acknowledges that any electronic signature has the same force and effect as the use of a signature affixed by hand, under New York Law Section 302.3 of the Electronic Signatures and Records Act.

**TWENTY-FIFTH:** Owner / Operator agrees he or she has read and understood the terms of this contract and by signing this agreement acknowledge they did not need a version of its terms in another language, although other foreign language versions of this agreement are available.

**TWENTY-SIXTH:**   ARBITRATION
In the event of any dispute, claim, question, or disagreement arising from or relating to this agreement or the breach thereof, the parties hereto shall use their best efforts to settle the dispute, claim, question, or disagreement. To this effect, the parties shall consult and negotiate with one another in good faith, in an attempt to reach a just and equitable solution, satisfactory to both parties. If resolution of the dispute, claim, question, or disagreement is not reached within a period of 60 days, then upon notice by either party, disputes that are within the jurisdictional maximum for small claims will be settled in the small claims court where the Owner / Operator resides.

DJ
INITIAL

All other disputes, claims, questions, or differences beyond the jurisdictional maximum for small claims courts within the locality of the Owner / Operator's residence shall be finally settled by arbitration in accordance with the Federal Arbitration Act.

Neither you nor SCI shall be entitled to join or consolidate claims in arbitration by or against other individuals or entities, or arbitrate any claim as a representative member of a class or in a private attorney general capacity.

The arbitration panel shall be made up of three (3) people. Each party shall choose one arbitrator that will serve on the panel in a non-neutral capacity. The two chosen arbitrators will select a third arbitrator who will be neutral. If the chosen arbitrators are unable to select a third arbitrator within ten (10) days of their selection, a third arbitrator shall be appointed by the American Arbitration Association. Each arbitrator shall have experience in the transportation industry and have a legal background.

Consistent with the expedited nature of arbitration, each party will upon written request of the other party promptly provide copies of any relevant documents necessary to support any claim or defense. All parties shall have the discretion to examine up to three (3) witnesses per party. Each deposition shall be limited to a maximum of two (2) hours. Any objections based on privilege and/or confidential information will be reserved for arbitration. The arbitration and any discovery prior to the arbitration will take place in a location convenient to both parties. The parties may submit briefs in lieu of any formal gathering for arbitration.

The arbitrators will have authority to award actual monetary damages only. No punitive or equitable relief is authorized. All parties shall bear their own costs for arbitration and no attorney's fees or other costs shall be granted to either party.

The arbitrators' decision shall be final and legally binding and judgment may be entered thereon.

**TWENTY-SEVENTH**: Owner / Operator acknowledges they have read this contract and its terms and agree to abide by the terms and conditions outlined in these documents.

**IN WITNESS WHEREOF**, the Owner / Operator has had sufficient time to review this document and the parties hereto have caused this Agreement and specific states endorsement and understandings to be duly executed the day and year first above written.

THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION AND CLASS-ACTION WAIVER WHICH AFFECTS YOUR LEGAL RIGHTS AND MAY BE ENFORCED BY THE PARTIES

| OWNER / OPERATOR: | SCI: |
|---|---|
| X _____ | |
| SIGNATURE | SIGNATURE |
| DATE: 01/03/13 | |
| DERICK JAMES | DATE: |
| PRINTED NAME: | |
| 146-32 230 ST | BY: Robert Slack |
| ADDRESS: | |
| Springfield GARDEN NY 11413 | ADDRESS: 25 Willowbrook Road |
| CITY/STATE/ZIP: | Queensbury, NY 12804 |
| 270747863 | |
| FEDERAL EIN# | |
| SOCIAL SECURITY NUMBER: | |

# APPENDIX A

## EQUIPMENT LIST

| | VEHICLE #1 | VEHICLE #2 |
|---|---|---|
| Year: | 2007 | |
| Make: | MITSU FUSO | |
| Model: | FM 260 | |
| Serial (VIN) No | JL6DGPIE67K020128 | |
| License Plate No.: | 44311 JX | |
| Vehicle Type: | 26FT Truck | |

(Types of Vehicles:  Car / Van (Mini) / Van (Full Size) / Truck (Pickup) / Truck (less than 16ft) / Truck (Over 16ft) / Other)

## AUTO INSURANCE INFORMATION  (please attach copy)

| | VEHICLE #1 | VEHICLE #2 |
|---|---|---|
| Carrier: | NTS Trucking Services LLC | |
| Policy #: | 2001765201 | |
| Expiration Date: | 2/26/2013 | |
| Type of Insurance: | Liability/Commercial | |

(Types of Insurance:  Personal / (Commercial) / Other)

## LICENSE INFORMATION  (please attach copy)

| | |
|---|---|
| Name on Driver's License: | Derick James |
| Driver's License Number: | 553067358 |
| Expiration Date: | 03/08/2013 |
| State of Issue: | New York |

# APPENDIX B - STATE SPECIFIC WARRANTIES

**1.** **COLORADO:**

The Owner / Operator further warrants:

- It is not required to work exclusively for any Customer, but if it does, it does so for a finite period of time;
- This Agreement is mutually agreed upon and does not authorize SCI to oversee the actual work or instruction on how to perform such work;
- The Owner / Operator will not receive a salary or hourly rate, only a negotiated fixed or contract rate.
- The contract will terminate as stated herein;
- SCI is not authorized to provide training;
- SCI will not provide tools or employment like benefits;
- SCI will not dictate the time of performance for deliveries;
- SCI will provide payment to any trade or business name provided by the Owner / Operator;
- Its business operations will remain separate and distinct from SCI and its Customers;
- Owner / Operator is not entitled to receive unemployment insurance compensation coverage.

**2.** **OREGON and NEW JERSEY:**

Owner / Operator acknowledges they are responsible to pay expense items that are the normal costs of doing business, such as tolls, fuel, oil, tires, repairs, garaging, parking and maintenance of vehicle(s) and other equipment, as well as, rent, office overhead, salaries, taxes and any other business expenses that may be required to perform its services. Owner / Operator further acknowledges and warrants:

- Owner / Operator is registered to do business within its respective state and locality of operation;
- Owner / Operator has or will file Federal and state income tax returns in the name of the business;
- Owner / Operator advertises its business;
- Owner / Operator maintains a separate office or base of operation;
- Owner / Operator endeavors to perform delivery services for various Customers.

**3.** **NEW YORK:**

Owner / Operator acknowledges they are responsible to pay expense items that are the normal costs of doing business, such as tolls, fuel, oil, tires, repairs, garaging, parking and maintenance of vehicle(s) and other equipment, as well as, rent, office overhead, salaries, taxes and any other business expenses that may be required to perform its services. Owner / Operator further warrants:

- Owner / Operator may set their own work schedules, and is free to accept or reject assignments;
- Any settlement payment was the result of a negotiated fixed or contract rate;
- The Owner / Operator files the appropriate business tax returns for any year in business;
- The Owner / Operator maintains a separate business identity with an EIN number;
- The Owner / Operator advertises its business and work for others;
- The Owner / Operator maintains a separate business or office space.

**4.** **ILLINOIS / NEVADA / MARYLAND / NEW HAMPSHIRE:**

- Owner / Operator is registered to do business within its respective state and locality of operation;
- Owner / Operator has or will file Federal and state income tax returns in the name of the business;
- This Agreement does not void any benefits Owner / Operator may be entitled to receive under state or federal law;
- The Owner / Operator advertises its business and work for others;
- The Owner / Operator maintains a separate business or office space.

**5.** **OHIO / WASHINGTON:**

- Owner / Operator is registered to do business within its respective state and locality of operation;
- Owner / Operator has or will file Federal and state income tax returns in the name of the business;
- Owner / Operator maintains workers' compensation insurance for any employees that reside in the state or reside outside the state but fall with the respective state's guidelines for maintaining workers' compensation insurance.

AJ
INITIAL