UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

MOUSSA OUEDRAOGO,
                      Plaintiff,

-v-

A-1 INTERNATIONAL COURIER SERVICE, INC.,
ET AL.

                      Defendant.
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: MAR 21 2014

12 Civ. 5651 (AJN)

MEMORANDUM &
ORDER

ALISON J. NATHAN, District Judge:

This is a collective action for unpaid wages and overtime pay, brought under the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), and New York common law. Defendants Subcontracting Concepts, LLC ("SCI") and Robert Slack (collectively, "SCI Defendants") have filed the instant motion to dismiss and compel arbitration as to Plaintiff Kenneth Chow ("Plaintiff"). Dkt. No. 70. Defendants A-1 International, Inc. ("A-1"), Ronald DeSena, John Rutigliano, and Javier Reyes (collectively, "A-1 Defendants") have filed an additional memorandum in support of that motion, which argues "that Plaintiff's claims against the A-1 Defendants must also be dismissed pursuant to this enforceable arbitration provision." A-1 Br. 1. For the reasons that follow, the motion is GRANTED.

## I. BACKGROUND[1]

Plaintiff alleges that he "worked for defendants as a local delivery driver from approximately mid-June 2012 to late August, 2012," during which time he was supervised by

---

[1] These facts are drawn from Plaintiffs' Complaint and from affidavits and accompanying exhibits submitted by the parties. For purposes of decided the motions to dismiss, the allegations in the Complaint are taken as true.

1

A-1 employee Javier Reyes and given assignments by other A-1 employees. Second Amended Complaint ("SAC") ¶¶ 74-77. Plaintiff's paychecks, however, "bore the SCI name and logo," *id.* ¶ 86, and each of his legal claims are alleged against all "defendants" generally. *See, e.g., id.* ¶ 102 (alleging that "[d]efendants failed to compensate Plaintiffs" proper overtime wages).

On June 11, 2012, Plaintiff signed an Owner/Operator Agreement ("Agreement") with SCI, which is a "third party administrator for owner/operators in the courier and transportation business." Eder Decl. ¶ 3; Agreement, Eder Decl. Ex. 1; Eder Decl. Ex. 3 ¶ 2. In that capacity, "SCI contracts with courier and logistics companies, including [A-1], to offer payment processing and other back-office services to companies that use owner-operators." Eder Decl. Ex. 3 ¶ 2.

Among other things, the Agreement provides that "any dispute, claim, question, or disagreement arising from or relating to [the Agreement] or breach thereof" that exceeds the jurisdictional maximum for the local small claims court "shall be finally settled by arbitration in accordance with the Federal Arbitration Act." Agreement, Eder Decl. Ex. 1 ¶ 26. The arbitration provision within the Agreement further provides that: (1) "[t]he arbitrators will have authority to award actual monetary damages only," expressly prohibiting the award of "punitive or equitable relief;" and (2) "[a]ll parties shall bear their own costs for arbitration," expressly prohibiting the award of "attorney's fees or other costs. . . to either party." *Id.*

The SCI Defendants filed this motion on July 31, 2013, requesting "an Order dismissing Kenneth Chow's action and compelling [him] to arbitrate his claims that are the subject of this lawsuit." *See* Def. Br. 1.

2

## II. DISCUSSION

The SCI Defendants argue that arbitration of Plaintiff's FLSA and NYLL claims is mandated by the arbitration provision of the Agreement, pursuant to the Federal Arbitration Act ("FAA"). Under the FAA, agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," and must be "rigorously enforce[d] . . . according to their terms." *American Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2309 (2013) (quoting 9 U.S.C. § 2; *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). In general, the FAA "reflects the overarching principle that arbitration is a matter of contract." *Id.* (citing *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010)). Accordingly, a court should order arbitration if it is satisfied that the agreement to arbitrate: (1) was validly formed; (2) is enforceable; and (3) applies to the dispute at issue. *See In re A2P Antitrust Litig.*, -- F. Supp. 2d --, 2013 WL 5202824, at *5 (S.D.N.Y. 2013) (quoting *Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 130 S.Ct. 2847, 2858-59 (2010)). There being no dispute that the Agreement containing the arbitration agreement was validly formed, the Court focuses its attention on the applicability of the arbitration provision to the current dispute and its enforceability. *See* Pl. Opp. 2, 6. In addition, the Court must determine whether and to what extent the arbitration provision applies to the nonsignatory A-1 Defendants and Robert Slack. *See* Def. Br. 8; A-1 Br. 1.

### A. Scope of Agreement to Arbitrate

As an initial matter, the Court addresses whether the arbitration agreement, by its own terms, applies to the current action, as arbitration may be compelled "only where [the court] is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock*, 103 S. Ct. at 2856 (emphasis in original) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943

3

(1995)). In general, courts interpret arbitration provisions by "apply[ing] ordinary state-law principles that govern the formation of contracts." *First Options*, 514 U.S. at 944 (internal citations omitted). In doing so, however, courts must give "due regard . . . to the federal policy favoring arbitration" and resolve "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Volt Info. Scis, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-76 (1989); *see also Ciago v. Ameriquest Mortgage Co.*, 295 F. Supp. 2d 324, 331 (S.D.N.Y. 2003) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.") (alteration in original) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

The arbitration provision at issue in this case purportedly applies to "any dispute, claim, question, or disagreement arising from or relating to this agreement or the breach thereof." Agreement, Eder Decl. Ex. 1 ¶ 26. The provision further provides that any such dispute, claim, or question that exceeds the jurisdictional maximum for the local small claims court "shall be finally settled by arbitration in accordance with the Federal Arbitration Act." *Id.* According to SCI, this provision requires Plaintiff to "arbitrate all claims related to SCI, Plaintiff's agreement with SCI, or any rights or obligations stemming from Plaintiff's relationship with A-1." Def. Br. 8. Because this action "involv[es] the rate of pay [Plaintiff] believes he was supposed to have received," SCI contends that it is "squarely covered" by the arbitration provision. Def. Reply 3. In particular, SCI points to Paragraph Fifteen of the Agreement, which provides that "the Owner/Operator shall be paid a fee based on a schedule of rates negotiated by them." Def. Reply 3 (quoting Agreement, Eder Decl. Ex. 1 ¶ 15).

The Court agrees. Plaintiff's claims are essentially claims for unpaid wages, and particularly for unpaid wages allegedly owed him as an employee under FLSA and NYLL, *see*

Compl. ¶¶ 102-141, and under the terms of their contract, see Compl. ¶¶ 142-47. These claims are therefore related to the Agreement, which addresses the rates at which he is to be paid, *see* Agreement, Eder Decl. Ex. 1 ¶ 15. Moreover, Plaintiff's relationship with SCI is, at the very least, related to the Agreement—without which it would not exist. *See* Agreement, Eder Decl. Ex. 1 ¶ 26. In light of the plain language of the provision and the "due regard" owed the federal policy favoring arbitration, *Volt Info. Scis. Inc.*, 489 U.S. at 476, the Court finds that Plaintiff's claims fall within the scope of the arbitration provision of the Agreement.

The Court is not persuaded otherwise by Plaintiff's argument that "[his] employment claims cannot arise from [the Agreement]" when read in light of the entire Agreement, and particularly provisions expressly disclaiming the existence of an employer-employee relationship between the parties. *See* Pl. Opp. 4 ("[N]o employer/employee relationship is created as a result of th[e] Agreement.") (second alteration in original) (citing Agreement, Eder Decl. Ex. 1 ¶ 6). According to Plaintiff, this explicit rejection precludes application of the arbitration provision to the instant action, because "an employer – as a matter of common logic and equity – cannot simultaneously urge that the contract is not one of employment *and* that it was intended to cover employment claims." Pl. Opp. 4. But SCI's insistence that it is not an "employer" for purposes of FLSA and NYLL does not contradict its position that the instant employment claims are covered by the arbitration provision. *Cf.* Pl. Opp. 4-5 (characterizing this as a contradiction to "be avoided in construing and enforcing a contract") (citing *Minerals Techs., Inc. v. Omya AG*, 406 F. Supp. 2d 335, 340 (S.D.N.Y. 2005)). As Plaintiff notes in his brief, whether the parties' relationship is properly characterized as an employment relationship under FLSA and NYLL is determined by "economic realities, not contractual labels." Pl. Opp. 4 (citing *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 143 (2d Cir. 2008); *Zheng v. Liberty Apparel*

*Co.*, 355 F.3d 61, 71-72 (2d Cir. 2003)). Whether or not economic realities indicate that Plaintiff is an employee for purposes of FLSA and NYLL, however, the Agreement forms the basis for his relationship with SCI and also addresses the rate at which he is to be paid for his work. *See* Agreement, Eder Decl. Ex. 1 ¶ 15.

The Court is also unpersuaded by Plaintiff's citation to *Cronas v. Willis Group Holdings Ltd.*, No. 06 Civ. 15295 (GEL), 2007 WL 2739769 (S.D.N.Y. Sept. 17, 2007). In that case, the court found that a Title VII discrimination claim did not fall within the scope of a clause "requir[ing] arbitration of any dispute that 'ar[ose] under th[e] [employment agreement].'" 2007 WL 2739769, at *11 (second alteration in original). Significantly, the arbitration clause in this case contains broader language—applying to claims that not only "arise under" but "relate to" the Agreement. *See* Slack Decl. ¶ 6. The employment agreement at issue in *Cronas*, moreover, did not otherwise address the subject of the litigation—employment discrimination. *See* 2007 WL 2739769, at *11 ("[N]one of the provisions of the Agreement make reference to the civil rights statutes or to discrimination claims generally.") Here, by contrast, the Agreement explicitly discusses the rate at which Plaintiff was to be paid for his work, *see* Agreement, Slack Decl., Ex. A ¶ 15, further bolstering the conclusion that the arbitration provision applies to Plaintiff's instant claims for unpaid wages.

B. Enforceability of Agreement to Arbitrate

Plaintiff further argues that the arbitration agreement is unenforceable for precluding statutory remedies. *See* Pl. Opp. 6-7 (citing *Green Tree Fin. Corp.-Ala v. Randolph*, 531 U.S. 79, 90 (2000); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985)). In particular, Plaintiff contends that the absence of fee-shifting or liquidated damages

6

provisions from the arbitration agreement operates as "nothing less than a wholesale gutting of the statutes' remedial provisions." Pl. Opp. 7.

The Court, however, need not reach the issue of whether such provisions might, in the abstract, preclude arbitration. This is so because the Defendants concede the unenforceability of these provisions vis-à-vis FLSA and NYLL and in light of the severability clause set forth in Paragraph 23 of the Agreement. That paragraph provides:

> If any provision of this Agreement or portion thereof is held to be unenforceable by a court of law or equity, said provision shall not prejudice the enforceability of any other provision or portion of the same provision, and instead such provision shall be modified to the least extent necessary to render such provision enforceable while maintaining the intent thereof.

Agreement, Eder Decl. Ex. 1 ¶ 23. Defendants concede that to the extent the Agreement would preclude Plaintiff from recovering attorney's fees or remedies statutorily mandated by FLSA and NYLL, the Agreement would be unenforceable. *See* Def. Br. 8-9. The Court agrees. Having so concluded, Paragraph 23 gives the arbitrator the authority to modify the agreement and interpret it in a lawful, enforceable manner. Because the severability provision enables the arbitrator to interpret any unenforceable provisions of the Agreement in an enforceable manner, the Court finds the fee and remedial provisions of the Agreement do not preclude arbitration. *Cf. Kristian v. Comcast Corp.*, 446 F.3d 25, 46-48 (1st Cir. 2006) (compelling arbitration notwithstanding invalid damages provision, where "savings" clause enabled arbitrator to interpret those provisions in an enforceable manner).

C. Application of Agreement to Arbitrate to Nonsignatory Defendants

Having found that the arbitration agreement is enforceable, the Court proceeds to determine whether Plaintiff must arbitrate his disputes with nonsignatories A-1 and Robert

Slack. For the reasons that follow, the Court finds that he must.

*1. A-1 Defendants*

Both the SCI and A-1 Defendants argue that the arbitration agreement applies to Plaintiff's dispute with A-1, notwithstanding the fact that A-1 is not a signatory to the contract. *See* Def. Br. 8; A-1 Br. 1. In particular, A-1 argues that "Plaintiff is estopped from avoiding arbitration of his dispute against A-1." A-1 Br. 1.

"Under principles of estoppel, 'signatories to an arbitration agreement can be compelled to arbitrate their claims with a [nonsignatory] where a careful review of the relationship among the parties, the contracts they signed . . . , and the issues that had arisen among them discloses that the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'" *In re A2P SMS Antitrust Litig.*, 2013 WL 5202824, at *6 (quoting *Denney v. BDO Seidman, L.L.P.*, 412 F.3d 58, 70 (2d Cir.2005)). In addition to this factual intertwinement, "there must be a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with [the signatory party] must be estopped from denying an obligation to arbitrate a similar dispute with the" nonsignatory party as well. *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 127 (2d Cir. 2010) (quoting *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 359 (2d. Cir.2008)). That is, the nonsignatory party seeking arbitration and the signatory party opposing it must have a "sufficiently 'close relationship.'" *In re A2P SMS Antitrust Litig.*, 2013 WL 5202824, at *9 (quoting *Lismore v. Societe Generale Energy Corp.*, No. 11 Civ. 6705 (AJN), 2012 WL 3577833, at *7 (S.D.N.Y. Aug. 17, 2012)).

Based on its review of the relationship among the parties and the Agreement, the Court finds that the subject matter of Plaintiff's dispute with A-1 is sufficiently "intertwined" with the

8

subject matter of his dispute with SCI to support estoppel. As the A-1 Defendants point out, Plaintiff "raises identical legal claims and factual allegations against A-1 and against SCI." A-1 Br. 1. Plaintiff, for example, alleges that "*[d]efendants* failed to compensate" him and other class members overtime wages, without making any distinction between A-1 and SCI, or any distinction between the entity and individual defendants. *See* SAC ¶ 102 (emphasis added). The identity of Plaintiffs' claims against both defendants satisfies the requirement that the issues sought to be resolved against the A-1 Defendants be factually "intertwined" with those sought to be resolved against the SCI Defendants and therefore subject to the arbitration agreement. *In re A2P SMS Antitrust Litig.*, 2013 WL 5202824, at *6 (quoting *Denney*, 412 F.3d at 70). *Cf. Ragone*, 595 F.3d at 128 (finding there to be "no question that the subject matter of the dispute between [Plaintiff] and [nonsignatory] is factually intertwined with the dispute between Ragone and [signatory]" where they were, "in fact, the same dispute").

The Court also finds the relationship between Plaintiff and the nonsignatory A-1 Defendants to be sufficiently close to justify arbitration. *See In re A2P SMS Antitrust Litig.*, 2013 WL 5202824, at *6; *see also Ragone*, 595 F.3d at 127 (quoting *Sokol*, 542 F.3d at 359). As alleged in the Second Amended Complaint, Plaintiff "was supervised by" and "was given assignments and routes by" A-1 employees, while receiving paychecks "b[earing] the SCI name and logo." SAC ¶¶ 76-77, 86. These allegations, in combination with the fact that the claims against A-1 and SCI are identical, support the conclusion that Plaintiff "understood [A-1] to be, to a considerable extent, [his] co-employer." *Ragone*, 595 F.3d at 127. Under these circumstances, Plaintiff's relationship with the A-1 Defendants is sufficiently close to estop him from denying the arbitrability of his dispute against them.

9

*2. Robert Slack*

Finally, Plaintiff argues that Robert Slack "[c]annot [b]enefit" from the agreement to arbitrate. Pl. Opp. 11. Having failed to enumerate specific arguments as to the application of the arbitration agreement to Plaintiff's dispute with Slack in their opening memorandum, Plaintiff argues, "[t]he SCI Defendants. . . have. . . waived the right to do so on reply." *Id.*

The Court disagrees and finds that the arguments that support arbitration as to Defendant SCI apply to Defendant Slack as well. As noted in their reply, "Robert Slack is named as a movant in the notice of the motion," and the memorandum in support of the motion to compel is entitled, "Defendants Subcontracting Concepts, LLC *and Robert Slack's* Memorandum of Law in Support of Motion to Dismiss and Compel Arbitration as to Plaintiff Kenneth Chow." Def. Reply. 9. Plaintiff, moreover, has articulated no arguments as to why Slack should not be covered by the arguments made in the opening memorandum. *See* Pl. Opp. 11. Accordingly, for the same reasons, Plaintiff's dispute with Defendant Slack is also arbitrable.

## III. CONCLUSION

For the foregoing reasons, the SCI Defendants' motion to dismiss and compel arbitration as to Plaintiff Kenneth Chow is granted with respect to Plaintiff's disputes against all defendants. Having decided to dismiss the case and compel arbitration, the Court need not reach the A-1 Defendant's request to "stay Plaintiff's action against A-1 pending the resolution of the arbitration of Plaintiff's claims against SCI." A-1 Br. 7.

SO ORDERED.

This resolves Dkt. No. 70.

Dated: March 21, 2014
New York, New York

ALISON J. NATHAN
United States District Judge