USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: SEP 18 2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Moussa Ouedraogo,

        Plaintiff,

–v–

A-1 International Courier Service, Inc., et al.,

        Defendant.

---

12-cv-5651 (AJN)

MEMORANDUM &
ORDER

ALISON J. NATHAN, District Judge:

    This is a putative class and collective action for unpaid wages, brought by delivery drivers who allege that they were misclassified as independent contractors by Defendants A-1 International, Inc. ("A-1") and Subcontracting Concepts, LLC ("SCI"). Before the Court are Plaintiff's motion for class certification and appointment of class counsel pursuant to Federal Rule of Civil Procedure 23, and renewed motion for conditional certification and court authorized notice pursuant to FLSA § 216(b). Dkt. Nos. 136, 139. For the reasons that follow, both motions are denied.

### I. Background

#### A. Factual Background

    Defendant A-1 "provides distribution, logistics, and office services," and approximately thirty-five to forty percent of its business consists of package delivery. Pl. Mem. (FLSA) 6. In the past three years, A-1 has employed approximately 250 drivers, of whom approximately 177 worked in New York. Swartz Decl. ¶ 10.

1

Plaintiff Moussa Ouedraogo[1] was a delivery driver based out of A-1's Long Island City facility from October 2007 until May 2011. Swartz Decl. Ex. N (Ouedraogo Decl.), 20:12-24. During that time, Ouedraogo was required to work a twelve-hour shift, from 6:00 p.m until 6:00 a.m., seven days a week. Swartz Decl. Ex. N. 66:4-8, 74:18-20. He was, moreover, paid a set amount for this work, which he could not negotiate, and which did not include compensation for overtime. *Id.* 66: 20-23; Second Amended Complaint ("SAC") ¶ 66.

In order to work at A-1, Ouedraogo was required to sign an Owner/Operator Agreement ("Agreement") with SCI, Swartz Decl. Ex. N 40:20-23, which expressly stated that "no employer/employee relationship is created under the Agreement or otherwise as a result of its relationship between it and SCI or its customers," *see* Swartz Decl. Ex. PP (Ouedraogo Agm't). Among other things, the Agreement required Ouedraogo to maintain his own vehicle and insurance, prohibited him from carrying passengers, and limited his ability to use information learned during the course of his work. *See id.*

Indeed, all drivers who work for A-1 are required to sign substantially similar Owner/Operator Agreements with SCI, which designate them as independent contractors. *See* Swartz Decl. Ex. I (Bartholome Dep) 62:16-20. SCI bills itself as a "third party administrator with two distinct client bases": delivery companies, which it refers to as "logistics companies," and delivery drivers, which it refers to as "independent contractors." SCI Opp. (Rule 23) 10. Among others things, SCI acts as a broker, supplying delivery companies with delivery drivers. *See* SCI Opp. (Rule 23) 12; Pl. Mem. (Rule 23) 4. In addition, SCI performs background checks and manages payrolls. *See id.* SCI provides these services for other delivery companies, and

---

[1] The second named Plaintiff, Kenneth Chow, has been dismissed from the case and compelled to arbitrate his claims. *See* Dkt. No. 220.

classifies all delivery drivers under contract as independent contractors. *See* Swartz Decl. Ex. I (Slack Dep.), 49:21-50:16.

### B. Procedural History

Plaintiff Ouedraogo filed this as a putative class and collective action on July 24, 2012, seeking to recover unpaid overtime wages under the NYLL and FLSA. Dkt. No. 1. Pursuant to the Civil Case Management Plan, Dkt. No. 14, Plaintiff moved for conditional certification of a nationwide collective on December 21, 2012, Dkt. No. 17. The Court initially granted conditional certification and authorized notice to the nationwide collective on July 8, 2013. Dkt. No. 45. On October 28, 2013, however, the Court granted Defendants' motion for reconsideration and narrowed the collective to include only drivers who had worked at A-1's facility in Long Island City, due to the absence of any evidence from drivers outside that facility. *See* Dkt. No. 105.

On October 4, 2013, during the pendency of the motion for reconsideration, Plaintiff issued notice "to some drivers who did not work out of the Long Island City facility." Dkt. No. 101. The Court approved the parties' proposed plan to send a letter to the mistakenly notified drivers stating that they had been "inadvertently" sent notice, and that they would "receive another notice in the mail and have an opportunity to join the case" at a later date if they were ultimately included in the certified collective. Dkt. No. 101, Ex. A. However, Plaintiff does not dispute that this letter was never actually sent.

Meanwhile, beginning on July 31, 2014, Defendants filed a series of motions to dismiss and compel arbitration with respect to opt-in plaintiffs who had signed versions of the Owner/Operator Agreement containing an arbitration clause, *see* Dkt. Nos. 70, 118, 193, which the Court granted in orders dated March 21, 2014, and May 13, 2014, Dkt. Nos. 220, 222. As a

result of these motions, named plaintiff Kenneth Chow was dismissed from this case and compelled to arbitrate his claims. However, it is not disputed that Ouedraogo did not sign an arbitration agreement. *See* Dkt. No. 227. Plaintiff further contends that putative class members who worked for A-1 prior to 2012 likewise signed agreements containing no arbitration clause. *See id.*

## II.   Rule 23 Certification

The Court first considers Plaintiff's motion for certification under Rule 23. Specifically, Plaintiff seeks certification of the following two classes: (1) "all persons working as drivers for A-1 in New York state at any time between July 24, 2006, and the date of final judgment in this matter," and (2) "all persons who signed an owner/operator agreement with SCI and worked as drivers in New York state between July 24, 2006, and the date of final judgment in this matter." Pl. Mem. (Rule 23) 16. For the reasons that follow, the motion is denied.

### A.   Legal Standard

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only,'" and it is accordingly available only to those parties who are able to "affirmatively demonstrate [their] compliance" with the requirements set forth in Federal Rule of Civil Procedure 23. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979); *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551-52 (2011)). Pursuant to Rule 23(a), a party seeking class certification must first establish that the "preconditions . . . of numerosity, commonality, typicality, and adequacy" have been met. *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201-02 (2d Cir. 2008). In addition to this threshold burden, the party must further "show that at least one of the three criteria enumerated in Rule 23(b) is satisfied." *Jacob v.*

4

*Duane Reade, Inc.*, 289 F.R.D. 408, 412 (S.D.N.Y. 2013). Here, Plaintiff invokes Rule 23(b)(3), which requires a finding that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Rule 23 "does not set forth a mere pleading standard," *Behrend*, 133 S. Ct. at 1432, and a party seeking certification must be prepared to prove that its prerequisites are met by a preponderance of the evidence, *Teamsters Local 445*, 546 F.3d at 202. A district court evaluating a motion for class certification must accordingly "assess all of the relevant evidence admitted at [that] stage" and "resolve[] factual disputes relevant to each Rule 23 requirement"—notwithstanding an issue's overlap with the plaintiff's case on the merits. *Id.* at 204 (citing *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41-42 (2d Cir. 2006)).

### B. Commonality

Rule 23(a)(2) requires a party seeking class certification to show that its claims "depend upon a common contention . . . [that is] of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Cuevas v. Citizens Fin. Grp., Inc.*, 526 F. App'x 19, 21 (2d Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)) (alteration in original). In this context, what matters is not just the "raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 131 S. Ct. at 2551 (quoting Richard Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

### 1. Employee Status

Plaintiff first argues that the commonality requirement is met by his ability to prove, "based on common classwide evidence," that "A-1 drivers were 'employees' (not independent contractors) under the NYLL." Pl. Mem. (Rule 23) 17. Here, "proof of commonality necessarily overlaps" with Plaintiff's merits-stage claim that Defendants misclassified the putative class of employees as independent contractors. *Dukes*, 131 S. Ct. at 2552. It is not disputed that Defendants had a blanket policy of classifying all drivers as independent contractors. Rather, it is the drivers' common status as employees entitled to overtime wages that must be proven. *Cf. Myers v. Hertz. Corp.*, 624 F.3d 537, 548 (2d Cir. 2010) (resolution of overtime claim not only requires a showing that the plaintiffs were denied overtime, but also that they were "*entitled* to overtime under FLSA"). Accordingly, in order to satisfy the commonality requirement, Plaintiff must prove his ability to "generate common *answers*" to the common question of the putative class members' employment status. *Dukes*, 131 S. Ct. at 2551.

Under the NYLL, "the critical inquiry in determining whether an employment relationship exists pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Bynog v. Cipriani Grp.*, 1 N.Y.3d 193, 198 (2003) (citations omitted). In conducting this inquiry, courts may consider a number of factors, including whether "the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule." *Id..* (citing *Lazo v. Mak's Trading Co.*, 84 N.Y.2d 896, 897 (1994); *Bhanti v. Brookhaven Mem. Hosp. Med. Ctr.*, 260 A.D.2d 334, 335 (2d Dep't 1999)). In the misclassification context, however, the third and fourth *Bynog* factors have only limited impact—after all, it is the Defendants' refusal to pay fringe benefits or include the workers on

their payroll that is being challenged. *See Hernandez v. Chefs Diet Delivery, LLC*, 915 N.Y.S.2d 623, 626 (2d Dep't 2011) (citing *Araneo v. Town Bd. of Clarkstown*, 865 N.Y.S.2d 281, 283-84 (2d Dep't 2008)) (parties' own designation of their relationship as an independent contractor or employer-employee relationship in internal documents and tax forms as may be considered but "is not dispositive"); *Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 190 (S.D.N.Y. 2003) ("An employer's characterization of an employee is not controlling, however, for otherwise there could be no enforcement of any minimum wage or overtime law."). These factors are nonexclusive, and the "[c]ontrol over the means [used to achieve the results] is the more important factor to be considered." *Hernandez*, 915 N.Y.S.2d at 625 (citing *In re Ted is Back Corp.*, 64 N.Y.2d 725, 726 (1984)). With these principles in mind, the Court considers Plaintiff's assertion that the putative class members' status as "'employees' (not independent contractors) under the NYLL" is a common question capable of being answered through classwide proof. Pl. Mem. (Rule 23) 17.

The first and fifth *Bynog* factors, concerning whether workers "worked at [their] own convenience" or "on a fixed schedule," 1 N.Y.3d at 198, appear to be incapable of classwide proof. There is, for instance, no evidence that the drivers' schedules were set according to a "centrally derived" policy. *Cf. Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 159, 156 (S.D.N.Y. 2008) (finding commonality requirement met where "there [were] significant elements of proof that [were] common across all class members," such as a central document "lay[ing] out in some detail the duties of the [putative class members]"); *Jacob*, 289 F.R.D. at 415 (finding commonality met where putative class members "carr[ied] out their duties . . . pursuant to a uniform policy, uniform training, uniform job description, and uniform procedures"). Nor is there otherwise evidence that putative class members were subject to a uniform scheduling

policy. Instead, the Court has been presented with evidence that these factors will require individualized proof, as the declarations submitted by the parties reveal that the degree of control actually exercised over the class members' schedules varied from individual to individual, and even from facility to facility. *Compare* Swartz Decl. Ex. O (Amuaku Decl.) ¶¶ 23-24 (former driver was "told . . . to report to work at approximately 7:00 a.m., Monday through Friday" and "was required to notify Robert at A-1" if he was going to be late); *with* Swartz Decl. Ex. X. (Espinal Decl.) (former driver "was not initially given a schedule at the Manhattan distribution center" and was never given a schedule "[a]t the other two distribution centers"). Indeed, it is undisputed some drivers received a flat fee for working a set shift, *see* Swartz Decl. Ex. N (Ouedraogo Dep.) 68:12-17), while drivers are "paid per [delivery] job," Sevilla Decl. Ex. A (Ouedraogo Dep.) 65:21-66:3, and have no set schedule, *see* Swartz Decl. Ex. X (Peter Espinal Decl.) ¶ 19 (driver "was not initially given a schedule at the Manhattan distribution center" and never received a schedule "[a]t the other two distribution centers").

  The Court rejects Plaintiff's argument that these variations in the degree of control exerted over the drivers' schedules "are not relevant to the underlying merits determination." Pl. Reply (Rule 23) 4. To the contrary, the degree of control actually exerted over a workers' schedule is a major factor in determining whether he is an employee under the NYLL. In *In re 12 Cornelia St.*, 56. N.Y.2d 895 (1982), for example, the New York Court of Appeals emphasized that the workers were "permitted to work whatever hours they cho[se]" in finding that "substantial evidence exist[ed]" to conclude that they were not "employees." *Id.* at 897-98; *see also Barak v. Chen*, 929 N.Y.S.2d 315, 318 (2d Dep't 2011) (finding that workers were not employees where they "scheduled their own working hours" and "had discretion to reject dispatches"). Conversely, the requirement that workers comply with a particular schedule is a

factor frequently cited in support of a finding of employee status under the NYLL. *See, e.g. Hart v. Rick's Cabaret*, 967 F. Supp. 2d 901, 924-26 (S.D.N.Y. 2013) (finding that workers were employees under NYLL where central guidelines governed the workers' schedules); *In re Enjoy the Show Mgmt.*, 731 N.Y.S.2d 287, 288 (3d Dep't 2001) (finding that substantial evidence supported the conclusion that dancers were employee where putative employer "schedule[d] the dancers' hours pursuant to its scheduling needs" and "provide[d] time sheets that must be filled out weekly"); *Murphy v. ERA United Realty*, 674 N.Y.S.2d 415, 416 (2d Dep't 1998) (finding that workers had raised a question of fact as to employee status where they were required to "work at least 40 hours per week"). As these cases demonstrate, the amount of control actually exerted over the drivers' work schedule is likely to be "significant—and could even be outcome determinative" with respect to the existence or not of an employment relationship, *Saleem v. Corporate Transp. Grp., Ltd.*, No. 12-cv-8450 (JMF), 2013 WL 6061340, at *5 (S.D.N.Y. Nov. 15, 2013), and therefore weighs strongly against the conclusion that this issue "is capable of classwide resolution," *Dukes*, 131 S. Ct. at 2551.

The second factor, whether the worker was permitted to take up other employment, also appears unsuited for classwide proof. While Plaintiff has presented some evidence that provisions in the Owner/Operator Agreement limiting the use of classified information effectively prevented drivers from "solicit[ing] [the] particular shipping client[s] of the SCI logistic company client," Swartz Decl. Ex. B (Slack Dep.) 94:18-23, it is also undisputed that some A-1 and SCI drivers *did* work for competitor delivery companies, *see* Sevilla Decl. Ex. C (Holguin Dep.) (indicating that he delivered packages for both A-1 and UPS). This too weighs against a finding that employment status may be proven on a classwide basis.

The third and fourth factors, which concern the payment of fringe benefits and payroll inclusion, do appear to be suited for classwide resolution. The evidence shows that all A-1 drivers and SCI drivers sign substantially similar Owner/Operator Agreements, pursuant to which they are designated independent contractors and paid as such. *See* Swartz Decl. Ex. I (Bartholome Dep) 62:16-20. However, it is the putative class members' designation as independent contractors that is the subject of this very litigation, and, in this context, these factors must be assigned only "modest weight." *Hart*, 967 F. Supp. 2d at 925; *see also In re Enjoy the Show Mgmt. Inc*, 731 N.Y.S.2d at 288 (finding that control over schedules, rate of pay, and equipment was sufficient to support finding of employer-employee relationship, "notwithstanding the fact that [plaintiffs] [were] required to sign a contract designating them as independent contractors"). In *Murphy v. ERA United Realty*, for example, the Second Department found that plaintiff had raised "a question of fact as to whether [she] was an independent contractor or an employee," notwithstanding that it was "undisputed that [she] signed an agreement stating that she was an independent contractor and the company did not withhold taxes from her commissions or provide employment benefits." 674 N.Y.S.2d at 416. To otherwise assign great significance to such conduct "would effectively allow any employer to control, under New York law, a worker's status simply by labeling [him] an independent contractor and denying [him] employee benefits." *Hart*, 967 F. Supp. 2d at 925. Thus, the ability to prove these factors on a classwide basis weighs only slightly in favor of a finding of commonality.

Based on the foregoing, the Court finds that Plaintiff has failed to prove by a preponderance of the evidence that the drivers' status as employees is sufficiently capable of classwide proof to satisfy the requirement of commonality under Rule 23(a)(2). For while there

is evidence that A-1 exerted significant control over the schedules and work days of many drivers, *see, e.g.* Swartz Decl. Ex. N. (Ouedraogo Dep.) 66:4-8, 74:18-20, there is also evidence that the amount of control varied from individual to individual, and from distribution center to distribution center, *see* Swartz Decl. Ex. X (Espinal Decl.) ¶ 19 (indicating that driver "was not initially given a schedule at the Manhattan distribution center" and was never given a schedule "[a]t the other two distribution centers" where he worked). Nor has Plaintiff otherwise proved that there is potentially dispositive classwide evidence regarding the degree of control exerted by Defendants, such as evidence of uniform policies regarding reimbursement, mandatory meetings, vacation policies, training, or other indications of central control over the delivery process. *See Hernandez*, 915 N.Y.S.2d at 625 (finding employment relationship to be sufficiently alleged where "plaintiffs alleged that the defendants . . . provided daily delivery manifests . . . . reimbursed the drivers for mileage, and required plaintiffs to obtain mandatory meetings, to obtain approval for vacation time, to undergo approximately one to two weeks of training, and to refrain from playing loud music while making deliveries); *Hart*, 967 F. Supp. 2d at 926 (finding that "written Entertainer Guidelines," which included "detailed and wide-ranging standards of dancer conduct and dress and performance style," as well as "control of minimum prices charged to customers for performances" and "threat of disciplinary action" were non-*Bynog* factors sufficient to "establish employee status under the NYLL").

      These deficiencies cannot be overcome by the common issues that have been identified by Plaintiff, which are insufficiently "dispositive . . . of the degree of control that [Defendants] actually exercised over each of the putative class members" to demonstrate that employer status is provable on a classwide basis. *Edwards v. Publishers Circulation Fulfillment, Inc.*, 268 F.R.D. 181, 184 (S.D.N.Y. 2010) (finding that commonality was not established where there was

11

no classwide evidence regarding "the degree of control that [the purported employer] actually exercised over each of the putative class members," notwithstanding the existence of "forms of agreement and other standardized documents . . . surely pertinent to the analysis"). For even if common questions regarding the Owner/Operator Agreement, Pl. Reply 5-6, and the requirement that drivers wear uniforms, Pl. Reply 8, could be resolved on a classwide basis, those classwide answers would be insufficient to determine the validity of each class members' claim to employee status "in one stroke," as is necessary in order to establish commonality, a prerequisite to certification. *Cuevas*, 526 F. App'x at 21 (quoting *Dukes*, 131 S. Ct. at 2551). Accordingly, the Court concludes that the common question of the putative class members' employment status cannot be answered by classwide evidence, and therefore does not satisfy the requirement of commonality set forth by Rule 23(a)(2). *See Dukes*, 131 S. Ct. at 2551.

### 2. Joint Employer

Plaintiff further argues that he will be able to provide a common answer to the question of whether "SCI jointly employed its drivers along with their delivery company clients." Pl. Mem. (Rule 23) 17. In particular, Plaintiff argues that "SCI's joint employer liability will not vary from driver to driver because SCI admits that it has the same relationship with each driver and each delivery company in all material ways." Pl. Mem. (Rule 23) 18. SCI counters that "it had nothing to do with the terms and conditions of work and had no control over such terms and conditions," SCI. Opp. (Rule 23) 2-3, and had no responsibility for "whether the Owner/Operators and courier service companies correctly adhered to that Agreement was not controlled by SCI," SCI. Opp. (Rule 23) 3-4, but does not dispute that it used substantially the same contract to govern its relationships with each delivery company and driver, *see* SCI Opp. 13 n.5 (referring to the "pertinent provision" of the Agreement it used with delivery services).

While the Court agrees that the central Agreement does provide one piece of common evidence regarding SCI's status as a joint employer, *cf. Jacob*, 289 F.R.D at 415 (finding that impact of uniform policies governing job duties on putative class members' status as employees was suited for classwide resolution), it must nevertheless conclude that Plaintiff has not shown that the question of SCI's status as a joint employer can be *answered* through classwide proof, *see Dukes*, 131 S. Ct. at 2551. Under the NYLL, an "employer" is defined to mean any person or entity "employing any individual in any occupation." N.Y. Lab. Law § 190(3); *see also id.* § 190(2) (defining "[e]mployee" as "any person "employed for hire by an employer"). That is, an entity's status as an "employer" is inextricably tied with its workers' status as "employees": as the New York Court of Appeals put it in *Bynog*, the degree of control test that determines whether a worker is an employee is "the critical inquiry in determining whether an *employment relationship* exists." 1 N.Y.3d at 198 (emphasis added); *see also Hart*, 967 F. Supp. 2d at 938-39 (reaching the question of the defendants' status as joint employers only after the plaintiffs' status as employees had been determined). *Cf. Irizarry v. Catsimatidis*, 722 F.3d 99, 105 (2d Cir. 2013) (reaching question of whether individual executive was an "employer" under the FLSA where it was "undisputed[]" that the "company employ[ed]" the plaintiff). As previously discussed, Plaintiff has failed to prove that common questions regarding the putative class members' status as employees are answerable on a classwide basis, *see supra* § II, and this failure forecloses him from providing a classwide answer to the common questions regarding Defendants' status as employers as well.

Accordingly, the Court finds that SCI's status as a joint employer cannot be demonstrated through classwide proof, and that it therefore cannot satisfy the requirement of commonality for purposes of certification under Rule 23. Plaintiff having thus failed to prove the necessary

prerequisite of commonality by a preponderance of the evidence, the motion for certification of a Rule 23 class is denied. The Court does not reach the remaining issues raised in relation to this request.

### III. FLSA § 216(b) Certification

The Court turns to Plaintiff's request for conditional certification of a nationwide collective under the FLSA. Dkt. No. 139. Defendants contend that this "renewed" motion for conditional certification is procedurally improper. *See* A-1 Opp. 39; SCI Opp. (FLSA) 13. For the reasons that follow, the Court agrees with Defendants, and the request is accordingly denied.

As an initial matter, the motion is untimely. At the outset of this case, the parties agreed and the Court ordered that any motion for conditional certification of a collective action would be filed "on or before [December 21, 2012]." Dkt. No. 14 ¶ 6(b). The instant motion was not filed until November 25, 2013, long after the time permitted for such a motion had elapsed. *See* Dkt. No. 139. This is, furthermore, Plaintiff's second motion for conditional certification of a nationwide class: as previously discussed, on October 28, 2014, the Court certified a narrower collective including only drivers who had worked at A-1's facility in Long Island City, and in doing so expressly declined to certify a broader nationwide class due to Plaintiff's failure to provide any evidence from drivers outside the Long Island City facility. *See* Dkt. No. 105. Unlike the cases cited by Plaintiff, the order denying their request for certification of a nationwide collective was not issued "without prejudice" to renewal, *see, e.g., Guan Ming Lin v. Benihana Nat'l Corp.*, 275 F.R.D. 165, 170 (S.D.N.Y. 2011) (addressing renewed motion for conditional certification of a nationwide collective where previous request had been denied without prejudice), nor did Plaintiff make such a request for leave to renew following discovery, *see* Dkt. No. 78. To the contrary, Plaintiff argued that the evidence then before the Court

14

provided a sufficient basis for the certification of a nationwide collective, *see* Dkt. No. 78, at 2-8, an argument that was expressly rejected in the order limiting the collective to the Long Island City facility, *see* Dkt. No. 105, at 2 (finding that the proffered evidence "was not sufficient to support certification of a nationwide collective"). The Court finds that a second motion for conditional certification is inappropriate under these circumstances, and Plaintiff's renewed request for conditional certification of a nationwide collective is therefore denied. The Court does not reach Defendants other arguments in opposition to this request.

### IV. Conclusion

For the foregoing reasons, the Court finds that Plaintiff has failed to meet his burden of proving that "there are questions of law or fact common to the class" within the meaning of Rule 23(a)(2), and his motion for class certification under Rule 23 is accordingly denied. The Court further finds that Plaintiff's "renewed" motion for conditional certification is improper, and it is denied as well. As previously discussed, the parties shall submit a joint letter proposing a briefing schedule for a motion for decertification within one week of the date of this order. *See* Dkt. No. 214.

SO ORDERED.

This resolves Dkt. Nos. 136, 139.

Dated: September 18, 2014
New York, New York

_____
ALISON J. NATHAN
United States District Judge